## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ANTHONY CIOLLI,                :
                                   :

                  Plaintiff,     :     Civ. No: 08-2601-LDD
                                   :

      v.                      :
                                   :

HEIDE IRAVANI, BRITTAN HELLER,  :
MARK LEMLEY, KEKER & VAN NEST  :
LLP, DAVID ROSEN, ROSEN &     :
ASSOCIATES, P.C., ROSS CHANIN,  :
REPUTATION DEFENDER, INC. and T14  :
TALENT,                         :
                                 :

               Defendants.   :
_____ :

## PLAINTIFF ANTHONY CIOLLI'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HEIDE IRAVANI'S MOTION TO DISMISS

Defendant Heide Iravani ("Iravani" or "Defendant") has filed a motion to dismiss counts one through six of Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim. For the reasons set forth below, the Court should deny Ms. Iravani's motion with prejudice.

## I. STATEMENT OF THE FACTS

The relevant factual background is set forth in detail in Mr. Ciolli's Complaint, which is incorporated herein by reference as if fully set forth at length.

## II. STANDARD OF REVIEW

When ruling on a motion under either Rule 12(b)(2) or 12(b)(6), the Court must accept as true the factual allegations in the plaintiff's complaint, construct any disputed facts in favor of the plaintiff, and give the plaintiff the benefit of any reasonable inferences.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). The Court

may grant the motion only if, viewed against this standard, it is clear and free from doubt that the moving party is entitled to the relief requested.

### III. THE COURT SHOULD DENY MS. IRAVANI'S 12(B)(2) MOTION

The Court should deny Ms. Iravani's 12(b)(2) motion because she has waived any objection to the Court's exercise of personal jurisdiction over her by failing to respond to Mr. Ciolli's complaint until almost five months after being properly served. Even if Defendant Iravani has not waived her right to challenge the Court's jurisdiction, the Court should deny her motion anyway because Mr. Ciolli has alleged facts sufficient to establish the Court's jurisdiction over Ms. Iravani as a matter of law.

### A.      MS. IRAVANI HAS WAIVED HER RIGHT TO RAISE THE PERSONAL JURISDICTION DEFENSE

Ms. Iravani has waived her Rule 12(b)(2) defense due to her failure to respond to Mr. Ciolli's complaint in a timely manner. Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." An entry of default is a "purely formal matter," Orange Theatre Corp v. Rayherstz Amusement Corp., 130 F.2d 185, 187 (3d Cir. 1942), that is entered as a matter of course upon submission of the requisite affidavit without the need for a formal motion. United States v. Jackson, 25 F. Supp. 79, 79 (D. Or. 1938). It is well established that, as a general rule, a defendant is deemed to have waived her defenses of lack of personal jurisdiction, improper venue, and insufficient service of process when the plaintiff has submitted the requisite Rule 55(a) affidavit demonstrating the defendant's default prior to submission of the defendant's Rule 12(b)(2) motion. See, e.g., Katz v. Lear Siegler, Inc., No. 91-1094, 1993 WL

262564, at *7 (Fed. Cir. 1993); <u>Global Ground Support, LLC v. All Test And Inspection, Inc.</u>, Nos. 07-0491, 06-1481, 2007 WL 1740288, at *2 (E.D. Pa. 2007); <u>Lagana v. Kmart Corp.</u>, 1998 WL 372347, at *3 (E.D. Pa. 1998); <u>Kampf v. Heinecke</u>, No. 94-6452, 1995 WL 262526, at *1 (E.D. Pa. 1995); <u>Gordon v. Strickland</u>, No. 93-3875, 1993 WL 386765, at *2 (E.D. Pa. 1993); <u>Totalplan Corp. of America v. Lure Camera Ltd.</u>, 613 F. Supp. 451, 456 (W.D.N.Y. 1985); <u>Turner Broadcasting System, Inc. v. Sanyo Elec., Inc.</u>, 33 B.R. 996, 1002 (N.D. Ga. 1983); <u>Bavouset v. Shaw's of San Francisco</u>, 43 F.R.D. 296, 298 (S.D. Tex. 1967); <u>Granger v. Kemm, Inc.</u>, 250 F. Supp. 644, 645 (E.D. Pa. 1966); <u>Zwerling v. New York & Cuba Mail S.S. Co.</u>, 33 F. Supp. 731, 721 (E.D.N.Y. 1940); <u>Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corp.</u>, 31 F. Supp. 403, 406 (W.D. Pa. 1940).

On June 27, 2008, Mr. Ciolli's counsel sent a copy of the Complaint to Ms. Iravani via certified mail, return receipt requested, at her address at 129 York Street, New Haven, CT 06511.  (Declaration of Mark E. Jakubik, Esquire, Docket #28, ¶ 4.)  The Complaint was delivered to Ms. Iravani's residence on June 30, 2008.  (<u>Id.</u> at ¶ 5.)  Despite being properly served, Ms. Iravani did not enter an appearance in this litigation or respond to Plaintiff's Complaint. Ms. Iravani's default was brought to the Court's attention on October 8, 2008 when Mr. Ciolli's counsel submitted his affidavit of service, along with a United States Postal Service Domestic Return Receipt, confirming that service had been effectuated on Ms. Iravani.  Ms. Iravani subsequently entered her appearance and filed her motion to dismiss on November 14, 2008, or more than four months after it had been due.  Because Iravani did not raise her personal jurisdiction defense until after Plaintiff filed an affidavit bringing Ms. Iravani's default to the Court's attention, Iravani has waived her personal jurisdiction defense.

3

**B. THE COURT HAS PERSONAL JURISDICTION OVER IRAVANI**

Even if the Court finds that Ms. Iravani has not waived the right to raise the personal jurisdiction defense, the Court should nonetheless deny her 12(b)(2) motion because Mr. Ciolli has alleged sufficient facts to establish the Court's jurisdiction.

  1. This Court's Jurisdiction Over Defendants Chanin and ReputationDefender is Imputed onto Defendant Iravani

It is well established that the actions of an actual or apparent agent must be imputed to the principal during the personal jurisdiction analysis.  See Jet Wine & Spirits, Inc., v. Bacardi & Co., Ltd., 298 F.3d 1, 7 (1st Cir. 2002); Myers v. Bennett Law Offices, 238 F.3d 1068, 1073 (9th Cir. 2001); Avesta Sheffield, Inc. v. Olympic Continental Resources, LLC, No. 99 C 7647, 2000 WL 198462, at *4 (N.D. Ill. 2000) ("Establishing personal jurisdiction over a defendant through an agent is also consistent with the due process clause.") (citing Wisconsin Electrical Mfg. Co. v. Pennant Products, Inc., 619 F.2d 676, 677-78 (7th Cir. 1980)).  Mr. Ciolli's complaint states—and neither Ms. Iravani nor any other defendant disputes—that Defendants Ross Chanin and ReputationDefender, Inc., were employed as Ms. Iravani's agents and performed all the tortious acts described in the complaint in their capacity as Ms. Iravani's agents.  If the Court finds that it has personal jurisdiction over Mr. Chanin and ReputationDefender – and Mr. Ciolli contends that it does -  it must also find, as a matter of law, that it also has personal jurisdiction over Ms. Iravani.  Id.  Accordingly, Mr. Ciolli incorporates herein by reference the entirety of his memorandum of law in opposition to Mr. Chanin and ReputationDefender's motion to dismiss for lack of personal jurisdiction.

  2. This Court's Jurisdiction Over Defendants Lemley, Keker & VanNest, Rosen, and Rosen & Associates is Imputed to Defendant Iravani

Mr. Ciolli's Complaint likewise alleges—and, again, neither Ms. Iravani nor any other defendant disputes—that Mr. Lemley, Keker & VanNest, Mr. Rosen, and Rosen & Associates were employed as Ms. Iravani's agents and performed all of the tortious acts described in the Complaint while acting in their capacity as Ms. Iravani's agents.[1]  If the Court has personal jurisdiction over any of those defendants – and, again, Mr. Ciolli contends that it does -  it must find, as a matter of law, that it also has personal jurisdiction over Ms. Iravani.   Mr. Ciolli therefore incorporates herein by reference the entirety of his memorandum of law in opposition to Mr. Lemley's motion to dismiss for lack of personal jurisdiction.[2]

> 3. This Court has Jurisdiction Over Defendant Iravani Pursuant to the Traditional Test

Under the traditional test, exercise of personal jurisdiction over a defendant is proper if the following three-prong test is met:

> (1) The defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum;
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities; and
> (3) Exercise of jurisdiction must be reasonable.

Budget Blinds, Inc. v. White, 536 F.3d 244, 260 (3d Cir. 2008) (citing Panavision Int'l v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1988)).

---

[1] Similarly, non-defendants Dorothy McLaughlin, an associate employed by Keker & VanNest, and Scott Grant, an associate employed by Rosen & Associates, were also acting as Ms. Iravani's agents and any personal jurisdiction this Court may have over them may be imputed to Ms. Iravani.

[2] Defendants Keker & VanNest, Rosen, and Rosen & Associates have not challenged personal jurisdiction, and have, therefore, effectively conceded that the Court in fact has personal jurisdiction over them.

Mr. Ciolli's explained in detail how the traditional test is satisfied with respect to Counts III through VI of his Complaint in his opposition to the motion to dismiss filed by ReputationDefender and Mr. Chanin. Since the actions of those defendants are all imputed to Ms. Iravani as a matter of law, and those actions are sufficient to establish personal jurisdiction, the Court may exercise personal jurisdiction over Ms. Iravani pursuant to the traditional test.

Likewise, Mr. Ciolli's opposition to Mr. Lemley's motion to dismiss addressed how this test is met with respect to counts I and II.  In addition, moreover, unlike Mr. Lemley, Ms. Iravani committed these tortious acts while attending a ten hour meeting <u>in Philadelphia</u>—arranged at her initiative through her attorneys—in which she, personally and through her attorneys, repeatedly attempted to obtain favorable concessions from Jarret Cohen, a Pennsylvania citizen and non-party to the Connecticut litigation, in exchange for dismissing Mr. Ciolli from the Connecticut lawsuit.[3]  Accordingly, this Court may exercise personal jurisdiction over Defendant Iravani due to her own actions, as well as those imputed onto her by the attorney defendants.

    4. <u>This Court Has Jurisdiction Over Defendant Iravani Pursuant to the Effects Test</u>

---

[3] As mentioned in Plaintiff's opposition to Defendant Lemley's motion to dismiss, an essential element a wrongful initiation claim under the Dragonetti Act is that the defendant initiated civil proceedings "primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based."  42 Pa. C.S. § 8351(a)(1).  Similarly, a required element of a common law abuse of process claim is that the pertinent legal process was used "primarily for a purpose which the process was not designed."  <u>Levin v. Upper Makefield Twp.</u>, 2003 U.S. Dist. LEXIS 3213, at *36 (E.D. Pa. 2003) (citing <u>Shiner v. Moriarty</u>, 706 A.2d 1228, 1236 (Pa. Super. 1998)).  Accordingly, Ms. Iravani's complaint and subsequent motions did not rise to the level of actionable torts until she and her agents manifested this improper purpose in Pennsylvania.

The Court also may exercise personal jurisdiction over Ms. Iravani pursuant to the effects test.  Under the effects test—which Ms. Iravani does not address in her lengthy brief—personal jurisdiction over a defendant is proper if the plaintiff alleges facts that are sufficient to meet the following three-prong test:

> (1) The defendant has committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm caused by that tort in the forum; and
> (3) The defendant expressly aimed his tortious conduct at the forum.

IMO Indus. v. Kiekert AG, 155 F.3d 254, 256 (3d Cir. 1998) (citing Calder v. Jones, 465 U.S. 783 (1984)).  As discussed in Mr. Ciolli's prior submissions, all of these elements are met with respect to Ms. Iravani's actions and those of her agents, which are, as a matter of law, imputed to her.  The Court may, therefore, also exercise personal jurisdiction over Iravani pursuant to the effects test.

## IV. THIS COURT SHOULD DENY IRAVANI'S RULE 12(B)(6) MOTION

Ms. Iravani challenges the legal sufficiency of each of the claims that Mr. Ciolli has asserted against her, and seeks the dismissal of his claims pursuant to Rule 12(b)(6).  Ms. Iravani's arguments should be rejected, and her motion to dismiss denied.

### A. PLAINTIFF HAS ESTABLISHED A CAUSE OF ACTION FOR WRONGFUL INITIATION OF CIVIL PROCEEDINGS

Ms. Iravani alleges that Mr. Ciolli has not alleged the facts necessary to establish a cause of action for wrongful initiation of civil proceedings under 42 Pa. C.S. § 8351 et seq. (the "Dragonetti Act").  On the contrary, Mr. Ciolli has more than adequately pleaded a prima facie case under the Dragonetti Act. The Court should, therefore, deny Ms. Iravani's motion.

#### 1. Plaintiff has Established a Lack of Probable Cause

Iravani claims that Mr. Ciolli has failed to allege facts indicating that she filed suit against Mr. Ciolli without probable cause because "[a]s the facts existed at the time Iravani filed her complaint in the Connecticut litigation on June 8, 2007, there was plentiful evidence that Ciolli was intimately involved with the T14 Talent website." Iravani Memorandum at 28.  Ms. Iravani's argument does not withstand even minimal scrutiny.

As support for her contention, Ms. Iravani cites numerous statements from Mr. Ciolli's Complaint that pertain to tortious acts committed by Defendant T14 Talent and other events, all of which occurred in February 2007.[4] Ms. Iravani ignores, however, the fact that she had professed her knowledge that Plaintiff had no involvement with T14 Talent in <u>March</u> 2007.  As stated in Paragraph 54 of Mr. Ciolli's Complaint, Mr. Chanin—acting as Iravani's agent—sent Plaintiff an email on March 3, 2007, in which he acknowledged that Plaintiff did not create the T14 Talent website.  Chanin's email read, in pertinent part:

> No one at ReputationDefender has claimed that you started the T14 site, nor would we want to do so.  We have maintained a bright-line distinction between those who started the T14 site and those affiliated with AutoAdmit who facilitated the popularity of T14 through their actions and non-actions.  We have not encouraged ad hominem attacks against you or anyone else responsible for running or maintaining AutoAdmit or any other site.  We will continue to make clear in future communications that you did not start the T14 site.  We exist to defend reputations, and we are seeking to protect our clients.

A true and correct copy of this email has been attached as Exhibit A.[5]

---

[4] Plaintiff notes that his complaint has not alleged that Defendant Iravani was aware of any of these events, nor has Iravani alleged, by affidavit or otherwise, that she ever knew any of those events had occurred.

[5] Although not attached as an exhibit to Plaintiff's complaint, this court may consider Defendant Chanin's March 3, 2007 email because it is a document referenced in the complaint that, in part, forms the basis behind Plaintiff's causes of action.  <u>See</u> <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 (3d Cir. 2004).

It is well established that, as a matter of law, an agent's knowledge is imputed to the principal. The Restatement (Third) of Agency reads, in pertinent part:

> For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal, unless the agent
>
>> (a) acts adversely to the principal as stated in §5.04, or
>> (b) is subject to a duty to another not to disclose the fact to the principal.

Restatement (Third) of Agency, §5.03 (2006).

Mr. Ciolli has alleged —and Ms. Iravani, Mr. Chanin, and ReputationDefender concede—that, at all relevant times, Mr. Chanin and ReputationDefender were acting as Ms. Iravani's agents. Mr. Chanin and ReputationDefender were not, furthermore, acting adversely to Ms. Iravani, nor were they subject to another duty not to disclose their knowledge to Ms. Iravani. Accordingly, as a matter of law, Mr. Chanin's knowledge that Plaintiff did not start the T14 Talent site is imputed to his principal, Ms. Iravani.[6] See Chapman v. Oceaneering Int'l, Inc., 2006 Phila. Ct. Com. Pl. LEXIS 434, at *4 (2006) (holding that lack of probable cause element of a Dragonetti Act cause of action was fulfilled when a barge company's employees knew that the plaintiff bore no fault for designing inadequate barges, yet barge company litigated negligence claim against the plaintiff anyway).

Even more significantly, Ms. Iravani's very own complaint filed in the Connecticut litigation ("Iravani complaint") expressly contradicts the claims that Mr. Lemley asserted on her behalf in late September 2007 and that she is now asserting

---

[6] In fact, Chanin's knowledge is imputed onto Iravani even if Chanin breached his duty and failed to inform Iravani of the knowledge he acquired. See Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994).

herself in her motion to dismiss.  In her June 8, 2007 complaint, which named both Mr.

Ciolli and "pauliewalnuts" as separate defendants, Ms. Iravani averred that "Defendant

Anthony Ciolli is and at all relevant times was a citizen of Pennsylvania, residing at 4020

Spruce Street, Philadelphia, Pennsylvania, 19104," and that "The citizenship and

addresses of the remaining Defendants are currently unknown."  Iravani Complaint,

¶¶3-4 (Ms. Iravani has attached a of the Connecticut complaint as Exhibit C to her

memorandum of law).  Likewise, the certificates of service for Iravani's August 6, 2007,

September 6, 2007, and October 4, 2007 motions for extensions of time all stated that

"The addresses of all the defendants except Anthony Ciolli is unknown."[7] Copies of the

August 6, 2007, September 6, 2007 and October 4, 2007 motions are attached hereto as

Exhibits B, C and D, respectively.  In the instant litigation, however, Defendant Iravani

repudiates all of these statements, and claims that she had probable cause to file suit

against Plaintiff because she believed at the time she filed the June 8, 2007 complaint

that "pauliewalnuts" was an alter ego of Plaintiff, even though no such allegation is

made in the complaint and both the plain text of the complaint and subsequent motions

expressly state that the identities of all other defendants, including "pauliewalnuts,"

were unknown.

It is well established that a litigant may not escape an unfavorable ruling on a

motion to dismiss or motion for summary judgment by submitting an affidavit,

testimony, or other statement that contradicts the litigant's complaint.  See Cleveland v.

Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-07 (1999); Soo Line R.R. Co. v. St. Louis

Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997) ("[J]udicial efficiency demands

---

[7] Although not attached as exhibits to Plaintiff's complaint, this court may consider these motions because they are court filings  referenced in the complaint that, in part, form the basis behind Plaintiff's causes of action.  See Lum, 361 F.3d at 222.

that a party not be allowed to controvert what it has already unequivocally told a court…").  This is because a litigant's pleadings, including her complaint, "are supposed to be factual rather than fictional." Giannone v. U.S. Steel Corp., 238 F.2d 544, 547 (3d Cir. 1956).  Accordingly, "where a party offers deliberate, clear and unequivocal facts in a complaint, those assertions are binding on the party and have the effective of withdrawing a factual issue from contention." Sobratti v. Tropical Shipping & Constr. Co., 267 F. Supp. 2d 455, 463 (D.V.I. App. Div. 2003) (citing Glick v. White Motor Co., 458 F.2d 1287 (3d Cir. 1972)) (collecting cases).

Here, Ms. Iravani clearly and unambiguously represented to the District of Connecticut, in her June 8, 2007 complaint and subsequent motions, that she did not know the identity of "pauliewalnuts."  Accordingly, Iravani cannot now argue that she had probable cause to sue Plaintiff on the basis that the Connecticut complaint was inaccurate and that Ms. Iravani actually believed on June 8, 2007, that "pauliewalnuts" was an alter ego of Plaintiff.  Even if this Court were to allow Ms. Iravani to pursue such a defense at some future stage of the proceedings, for purposes of the current motion the Court must accept as true all of the plaintiff's allegations, construct any disputed facts in favor of the plaintiff, and give the plaintiff the benefit of any reasonable inferences. Miller Yacht Sales, 384 F.3d at 97.

Even assuming that the Connecticut complaint inaccurately portrayed Ms. Iravani's knowledge regarding the identity of "pauliewalnuts," it is not disputed that Ms. Iravani was aware, at the very latest, that Mr. Ciolli was not "pauliewalnuts" in late September 2007, after having received an affidavit[8] from Mr. Ciolli as well as

---

[8] Ms. Iravani claims that it was not until the "late date" of September 21, 2007 "that Ciolli provided a sworn affidavit stating that he was not "pauliewalnuts."  As stated

"information ... from Reputation Defender" that "led [her] to question the Ciolli-Walnuts connection." Complaint, ¶141.

Despite being unquestionably aware of Plaintiff's innocence by this point, Ms. Iravani and Ms. Heller nonetheless refused to dismiss Mr. Ciolli from the Connecticut litigation and continued to pursue their claims against Mr. Ciolli because, according to Mr. Lemley, one of them was "upset" with him.  Complaint, ¶144.  As discussed in further detail in Mr. Ciolli's opposition to the motion to dismiss filed by Defendants Rosen and Rosen & Associates, which Mr. Ciolli incorporates herein, it is well established that an admission by a plaintiff or a plaintiff's agent that the defendant in the initial litigation was not liable fulfills the lack of probable cause element of a Dragonetti Act action, even if the admission occurs after the litigation was initiated.  See Chapman, 2006 Phila. Ct. Com. Pl. LEXIS 434, at *3 (holding that lack of probable cause element fulfilled when barge designer and its attorneys, after complaint had been

---

earlier, Ms. Iravani's agent had told Mr. Ciolli in March 2007 that she knew Mr. Ciolli was not "pauliewalnuts," Ms. Iravani never alleged that Mr. Ciolli was "pauliewalnuts" in her complaint filed in Connecticut, and neither Ms. Iravani nor her agents ever made such an allegation prior to Mr. Lemley's September 17, 2007 phone call.  More importantly, Ms.  Iravani neglects to mention that Mr. Ciolli repeatedly offered to submit an affidavit at the August 7, 2007 meeting stating that none of the pseudonymous defendants was his alter ego, yet Ms. Iravani, Ms. Heller, and the Attorney Defendants expressly refused to accept Mr. Ciolli's affidavit.  Mr. Ciolli's again offered to provide an affidavit, and was again refused, in mid-August 2007 when Marc Randazza, Plaintiff's counsel in the Connecticut litigation, spoke to Dorothy McLaughlin, an associate employed by Defendant Keker & VanNest, and offered the affidavit to dispel any notion that Mr. Ciolli was a pseudonymous defendant.  Thus, this Court should not only reject the proposition that Mr. Ciolli's affidavit was submitted at a "late date," but treat the Defendants' attempts to maintain deliberate ignorance or willful blindness of Mr. Ciolli's innocence, as manifested through their repeated rejections of Mr. Ciolli's affidavit, as further evidence of their knowledge that Mr. Ciolli was innocent and that no probable cause existed to maintain their lawsuit against him. United States v. Bohn, 281 Fed. Appx. 430, 439 (6th Cir. 2008).  To the extent that the Court finds these allegations relevant to the disposition of Ms. Iravani's motion but not adequately pleaded in Mr. Ciolli's Complaint, Mr. Ciolli respectfully requests that he be provided the opportunity to amend his Complaint in lieu of a dismissal.

filed, recognized that builder had no liability in the underlying action, but continued to pursue claims against builder anyway).  Accordingly, even if Ms. Iravani had possessed a good faith belief that "pauliewalnuts" was an alter ego of  Mr. Ciolli when she initiated the Connecticut litigation,[9] she would remain liable under the Dragonetti Act based upon her failure to dismiss Mr. Ciolli from the Connecticut lawsuit upon discovering his innocence.

Mr. Ciolli has pleaded facts that are more than sufficient to establish that Defendants, including Ms. Iravani, initiated the Connecticut litigation without probable cause.  Paragraphs 100 through 102 expressly state, moreover, that although Ms. Iravani purported to assert multiple causes of action against Mr. Ciolli in the Connecticut litigation, the complaint that she filed in Connecticut did not allege <u>any</u> wrongdoing by Mr. Ciolli. To the contrary, the Connecticut complaint merely identified Mr. Ciolli as AutoAdmit's Chief Education Director.  There were absolutely <u>no</u> allegations in the Connecticut complaint from which it could be inferred that Mr. Ciolli engaged in any conduct harmful to Ms. Iravani.  The Connecticut causes of action asserted against Mr. Ciolli were therefore unjustified as a matter of law.  See <u>DaimlerChrysler Corp. v. Askinazi</u>, 2000 U.S. Dist. LEXIS 9165, at *22 (E.D. Pa. 2000) ("[I]n order for one person . . . to bring a claim against another, that person must have actually been aggrieved by the conduct of the other."); <u>see also</u> <u>Plowden v. Cole</u>, 2000 U.S. App.

---

[9] However, even if Iravani maintained such a good faith belief at the time she filed her complaint, such a belief would not relieve her of liability because none of the facts alleged in her complaint would allow her to successfully file suit against "pauliewalnuts" on any of the stated causes of action.  For instance, while Iravani claims to sue "pauliewalnuts" for defamation, her complaint does not identify a single statement actually made by "pauliewalnuts," let alone a defamatory one.  In fact, "pauliewalnuts" is mentioned only a single time in Iravani's complaint, in which he is only identified as the organizer of the T14 Talent website.  <u>See</u> Iravani Complaint, ¶45-46.

LEXIS 19202, at *3 (6th Cir. 2000); <u>Lecrone v. Leckrone</u>, 580 N.E.2d 1233, 1243 (Ill. Ct. App. 1991). The complete absence from the Connecticut complaint of any allegation of wrongdoing by Plaintiff, when viewed under the appropriate standard at this stage of the proceedings, is sufficient to establish that Plaintiff has adequately pleaded that Iravani sued Plaintiff in Connecticut without probable cause.

Mr. Ciolli respectfully submits that the Court should deny Ms. Iravani's motion to dismiss the Dragonetti Act claim that he has asserted in Count I of the Complaint.

### B.   MR. CIOLLI HAS ADEQUATELY PLEADED A CLAIM FOR ABUSE OF PROCESS

Ms. Iravani has asked the Court to dismiss Mr. Ciolli's claim for abuse of process, set forth in Count II of his Complaint, on the grounds that Mr. Ciolli has not pleaded facts sufficient to establish that Ms. Iravani prosecuted her claims asserted against Mr. Ciolli in the Connecticut litigation for an improper purpose.[10] Mr. Ciolli has described in detail, in his opposition to Mr. Rosen and Rosen & Associates' motion to dismiss, the factual basis for his assertion that the Defendants, including Ms. Iravani, prosecuted the Connecticut claims against Mr. Ciolli for an improper purpose. Mr. Ciolli incorporates his opposition to the Rosen Defendants' motion herein as if fully set forth at length.

Mr. Ciolli respectfully submits that he has pleaded facts that are sufficient to establish that Ms. Iravani pursued her claims against Mr. Ciolli for an improper and

---

[10] In his opposition to Mr. Chanin and ReputationDefender's motion, Mr. Ciolli did in fact state that, to the extent that his claim for slander in Count IV is premised upon a conversation that Mr. Chanin had with Dean Gary Clinton of the University of Pennsylvania law school, it appears that the slander claim is time barred. To the extent that discovery in this matter produces evidence of other actionable statements that are not time barred, Mr. Ciolli reserves the right to seek to amend his Complaint to assert any viable claims based upon such statements.

unlawful purpose. He therefore requests that the Court deny Ms. Iravani's motion to dismiss Count II of the Complaint.

### C.   MR. CIOLLI HAS ADEQUATELY PLEADED A CLAIM FOR LIBEL

Ms. Iravani seeks the dismissal of the claim asserted against her in Count III of the Complaint for libel because Mr. Ciolli has not pleaded facts sufficient to establish that Ms. Iravani made statements about Mr. Ciolli that are capable of a defamatory meaning. Mr. Ciolli has, however, more than sufficiently alleged that Ms. Iravani in fact made actionable statements, and the Court should deny her motion.

In the first instance, it should be noted that Mr. Ciolli has explained in detail how certain statements that Mr. Chanin and Reputation Defender made about him were defamatory in nature and therefore actionable in a claim for libel. It is not disputed that Mr. Chanin and ReputationDefender were, at all relevant times, acting as Ms. Iravani's agent. As such, their conduct is imputed to Ms. Iravani, and their defamatory statements are actionable as against Ms. Iravani as well as against Mr. Chanin and ReputationDefender. Mr. Ciolli therefore incorporates herein by reference his opposition to Mr. Chanin and ReputationDefender's motion to dismiss Count III of the Complaint.

Ms. Iravani further argues, with respect to certain statements attributed to her directly, as distinguished from statements made by her agents, in the Complaint, such statements are likewise not actionable for a variety of reasons. Again, Ms. Iravani is incorrect.

Ms. Iravani first asserts that statements made in a story from the Washington Post – statements that Mr. Ciolli has alleged Ms. Iravani made – cannot be defamatory

as a matter of law because they do not name Mr. Ciolli by name and do not imply Mr.
Ciolli's involvement in the conduct that was the subject of the statements, and because
the statements made in the article did not "grievously fracture" Mr. Ciolli's standing in
the community. Ms. Iravani is wrong on both points.[11]

The article in question – which is attached to Ms. Iravani's memorandum of law
as Exhibit B – expressly identifies Mr. Ciolli and identifies him, incorrectly, as one of the
individuals who "runs" the AutoAdmit website. The article discusses, among other
things, the operation of the AutoAdmit site, and Mr. Ciolli's purported involvement in
running the site. It is wholly reasonable, given the article's at least partial focus on
Messrs. Ciolli and Cohen, to infer that Ms. Iravani sought to imply that Mr. Ciolli was at
least in part responsible for the conduct that Ms. Iravani described in the article, and it
is perfectly plausible to assume, at this stage of the litigation, that a reader of the
Washington Post article so inferred.

There is also a reasonable basis to believe that Ms. Iravani's statement to the Post
had the effect of causing significant damage to Mr. Ciolli's standing in the community.
The article explicitly identifies Mr. Ciolli as a law student. The implication of the
statement is that Mr. Ciolli either posted Ms. Iravani's photographs, or allowed others to
do so, without her permission and for the purpose of enabling others to ridicule Ms.
Iravani and to engage in a vile and reprehensible online discussion about her. A reader
of the article could reasonably infer, based upon the statements at issue, that Mr. Ciolli

---

[11] Ms. Iravani also contends that Mr. Ciolli's Complaint is misleading in its attribution of
any statements from the Washington Post article to Ms. Iravani because the article does
not identify any of the women quoted. Because the Court must consider as true the well
pleaded allegations of Mr. Ciolli's Complaint at this stage, his averments with respect to
the identity of the person making the statements must be taken as true. It is also
significant, moreover, to note that Ms. Iravani has not denied that she in fact made the
statements at issue.

had engaged in, or allowed others to engage in, conduct that was unlawful, and of a nature that would call into question his fitness as a member of the legal community. Such allegations are plainly capable of "fracturing" Mr. Ciolli's standing in the legal community. Indeed, Mr. Ciolli has alleged that, as a consequence of the entire AutoAdmit affair, including the publicity given to incorrect accounts of his involvement with AutoAdmit, his standing in the legal community was <u>in fact</u> fractured, and that his offer of full time employment at Edwards Angell Palmer & Dodge was withdrawn.

Ms. Iravani likewise claims that the statements made in the Yale Herald article, attached to her memorandum of law as Exhibit D, that Mr. Ciolli has attributed to Ms. Iravani are not actionable libel because the statement does not refer to Mr. Ciolli by name, and, she implies, because the statements are not capable of a defamatory meaning.

The Yale Herald article expressly states that Ms. Iravani's photographs were spread to "blogs ... and pornographic websites" after she asked the "site administrators" to remove them from AutoAdmit. Given that Mr. Ciolli had been identified publicly – inaccurately – as an AutoAdmit "site administrator," including by the Washington Post, it is clear that Mr. Ciolli was one of the individuals to whom the Yale Herald was referring. The assertion that the statements in the Yale Herald article are not defamatory because Mr. Ciolli was not named is without merit, since the reasonable inference to be drawn is that Mr. Ciolli was one of the individuals to whom the article was referring. Ms. Iravani further claims that the statement at issue is not defamatory because the article does not state that one of the site administrators – including, presumably, Mr. Ciolli – distributed Ms. Iravani's photographs to pornographic websites but, rather, merely implied that some anonymous AutoAdmit user had done so.

17

Ms. Iravani's argument in this regard is little more than nonsense. The article states that the photographs spread to blogs and pornographic websites only <u>after</u> Ms. Iravani asked AutoAdmit's "administrators" to remove them from AutoAdmit. The article clearly implies a causal effect between Ms. Iravani's request and the subsequent re-publication of the photographs, and without question implies that the AutoAdmit "administrators" had some involvement in that re-publication. The Yale Herald article thus plainly implies that AutoAdmit's administrators – including Mr. Ciolli – was involved with pornography by virtue of the dissemination of Ms. Iravani's photographs to pornographic websites. Such statements are plainly capable of a defamatory meaning, and Mr. Ciolli has thus properly alleged a claim for libel against Ms. Iravani.[12]

Mr. Ciolli respectfully submits that he has pleaded facts sufficient to state a claim against Ms. Iravani for libel. Her motion to dismiss Count III of the Complaint should therefore be denied.

### D. MR. CIOLLI HAS ADEQUATELY PLEADED A CLAIM FOR FALSE LIGHT INVASION OF PRIVACY

In count V of the Complaint Mr. Ciolli asserts a claim against Ms. Iravani for publicity placing him in a false light. Ms. Iravani seeks the dismissal of this claim because, she argues, Mr. Ciolli has not pleaded facts sufficient to establish that Ms. Iravani gave publicity to private facts about Mr. Ciolli that would have been highly offensive to a reasonable person. Mr. Iravani's argument is misplaced.

---

[12] Although the Yale Herald article does not identify Ms. Iravani by name, she has not denied that she was the unnamed Yale Law Student who was interviewed for the article. Since the entire article was a question and answer, moreover, it is perfectly reasonable to assume that the interview subject – who Mr. Ciolli has alleged was Ms. Iravani – was the source of the defamatory statement identified in Mr. Ciolli's Complaint.

As discussed fully in Mr. Ciolli's opposition to Mr. Chanin and ReputationDefender's motion to dismiss his Complaint, which is incorporated herein by reference, proof that Ms. Iravani gave publicity to <u>private</u> facts is not an element of the false light invasion of privacy tort. <u>See</u> <u>Seale v. Gramercy Pictures</u>, 964 F. Supp. 918, 923 (E.D. Pa. 1997)(discussing elements of false light tort). While it is true that there are cases decided by Pennsylvania state courts that appear to impose a requirement that the facts to which publicity is given be "private" facts, it is also the case that Pennsylvania courts have identified "false light" and "publicity to private facts" as separate branches of the invasion of privacy tort. <u>See</u> <u>Larsen v. Philadelphia Newspapers, Inc.</u>, 375 Pa. Super. 66, 543 A.2d 1181 (<u>en</u> <u>banc</u>), <u>allocator</u> <u>denied</u>, 520 Pa. 597, 552 A.2d 251 (1988), <u>cert.</u> <u>denied</u>, 489 U.S. 1096, 109 S.Ct. 1568, 103 L. Ed. 935 (1989). It would appear that those cases that purport to engraft a "private facts" element onto the false light tort do so based upon an improper conflation of the "false light" tort with the "publicity to private facts" tort. As this court made clear in the <u>Seale</u> case, a proper analysis of the false light tort entails no such "private facts" requirement. As explained in Mr. Ciolli's opposition to Mr. Chanin and ReputationDefender's motion, Mr. Ciolli has clearly alleged facts sufficient to state a claim for false light invasion of privacy.

Mr. Ciolli respectfully submits that Ms. Iravani's motion to dismiss Count V of the Complaint should be denied.

### E.  MR. CIOLLI HAS ADEQUATELY PLEADED A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

In Count VI of the Complaint Mr. Ciolli asserts a claim for tortious interference with contractual relations. Ms. Iravani seeks the dismissal of this claim based upon the fact that, she argues, Mr. Ciolli was an employee at will and because Mr. Ciolli has not

alleged facts sufficient to establish purposeful interference with a contractual relationship. Mr. Iravani's arguments lack merit.

It is of course true that the existence of a valid contract is a necessary element of a claim for tortuous interference with contractual relations. See Hillis Adjustment Agency, Inc. v. Graham, 911 A.2d 1008, 1012 (Pa. Super. 2006). Mr. Ciolli has, in fact, adequately pleaded this element. Mr. Ciolli explicitly alleges in the Complaint that EAP&D extended him an offer of full time employment, and that he had accepted the offer. As a matter of law this is sufficient to form a contract. See Yarnall v. Almy, 703 A.2d 535, 538 (Pa. Super. 1997)(elements of contract are offer, acceptance and consideration or mutual meeting of the minds). It is further established that interference with the employment relationship may form the basis for a claim for tortious interference. See Salisbury House, Inc. v. McDermott, No. 96-CV-6486, 1998 WL 195693, *13 (E.D. Pa. March 24, 1988)(recognizing right to pursue employment free from interference from other persons). Mr. Ciolli has therefore adequately alleged the existence of a contractual relationship between himself and EAP&D.

That his employment may have been "at will" did not give third parties, such as Ms. Iravani, the right to interfere with Mr. Ciolli's putative employment at EAP&D. While EAP&D may have had virtually unfettered discretion to terminate Mr. Ciolli's employment, Mr. Ciolli's status as an "at will employee" did not bestow on third parties such as Ms. Iravani the right to interfere with Mr. Ciolli's relationship with EAP&D. Ms. Iravani's unlawful interference with that relationship is fully actionable as a matter of Pennsylvania law. Salisbury, supra.

Mr. Ciolli has also alleged facts sufficient to establish the improper interference element of a tortious interference claim. Mr. Ciolli has alleged that Mr. Chanin and

ReputationDefender, Ms. Iravani's agents, conspired with others to inundate EAP&D with letters urging it to terminate its relationship with Mr. Ciolli. (Complaint, ¶205.) He has further alleged that such letters were in fact sent to EAP&D, leading to the firm's rescission of its employment offer. (Id. at ¶206.) Even if Mr. Chanin and ReputationDefender did not personally send such letters to EAP&D, EAP&D's rescission of its employment offer was clearly the result of their wrongful and deliberate conduct, whether the actual letters sent to EAP&D were written by Mr. Chanin and ReputationDefender or by someone else at Mr. Chanin and ReputationDefender's instigation. It is not disputed, moreover, that at all relevant times Mr. Chanin and ReputationDefender were acting as Ms. Iravani's agents. As such, as discussed previously, their conduct is imputed to Ms. Iravani as Mr. Chanin and ReputationDefender's principal. Mr. Ciolli has, therefore, pleaded facts sufficient to state claim for tortious interference.

## V.    THE COURT SHOULD DENY MS. IRAVANI'S MOTION TO STRIKE

Following Keker & Van Nest's ("KVN") lead Ms. Iravani has also asked the Court to strike certain paragraphs of Mr. Ciolli's Complaint pursuant to Rule 408 of the Federal Rules of Evidence and Rule 12(f) of the Federal Rules of Civil Procedure. In support of her motion, she incorporates by reference KVN's filings in support of their motion to strike. Mr. Ciolli incorporates herein by reference his opposition to KVN's motion. For present purposes, Mr. Ciolli will simply point out that Ms. Iravani's motion is premised upon the same faulty premise as KVN's motion to strike – that Rule 408 of the Rules of Evidence establishes an absolute bar to the use of purported settlement discussions in any and all future litigation, regardless of the purpose for which the evidence of the discussions is offered. As Mr. Ciolli established in his opposition to

KVN's motion to strike, the position that Ms. Iravani now espouses is supported neither by the actual language of Rule 408, nor the cases interpreting the Rule. Assuming that the discussions at issue are properly characterized as "settlement discussions," there is no legitimate basis for prohibiting Mr. Ciolli from introducing evidence of the discussions in this case.

Mr. Ciolli respectfully submits that the Court should deny Ms. Iravani's motion to strike certain paragraphs of the Complaint.

## VI.    CONCLUSION

For the foregoing reasons, Mr. Ciolli respectfully requests that the Court enter an Order denying with prejudice Defendant Heide Iravani's Motion to Dismiss Counts I through VI of the Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) & (6), and her Motion to Strike Paragraphs of the Complaint.

Respectfully submitted,

THE JAKUBIK LAW FIRM


BY:_____
        Mark E. Jakubik
        7715 Crittenden Street, Suite 350
        Philadelphia, PA 19118
        Phone:(215) 242-4756
        Fax: (215) 701-1885
        Email: mjakubik3@comcast.net

        Attorney for Plaintiff
        Anthony Ciolli

Date: December 10, 2008