IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY CIOLLI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HEIDE IRAVANI, et al. | : | NO. 2:08-cv-02601 |

Legrome D. Davis, J.                                                    March 31, 2009

<u>MEMORANDUM</u>

Presently before the Court are Defendants Ross Chanin ("Chanin") and

ReputationDefender Inc.'s ("ReputationDefender") Motion to Dismiss (Doc. No. 26), Plaintiff

Anthony Ciolli's ("Ciolli") Memorandum of Law in Opposition thereto (Doc. No. 36),

Defendants Chanin and ReputationDefender's Reply in further support thereof (Doc. No. 49),

Defendants David Rosen ("Rosen") and Rosen & Associates, P.C.'s ("Rosen & Associates")

Motion to Dismiss (Doc. No. 30), Plaintiff Ciolli's Memorandum of Law in Opposition thereto

(Doc. No. 40), Defendant Mark Lemley's ("Lemley") Motion to Dismiss (Doc. No. 32), Plaintiff

Ciolli's Memorandum of Law in Opposition thereto (Doc. No. 38), Defendant Lemley's Reply in

further support thereof (Doc. No. 47), Defendant Heide Iravani's ("Iravani") Motion to Dismiss

(Doc. No. 56), Plaintiff Ciolli's Memorandum of Law in Opposition thereto (Doc. No. 61), and

Defendant Iravani's Reply in further support thereof (Doc. No. 64).  Also before the Court are

Defendant Keker & Van Nest LLP's ("Keker & Van Nest") Motion to Strike Paragraphs of the

Complaint (Doc. No. 31), Plaintiff Ciolli's Memorandum in Opposition thereto (Doc. No. 39),

and Defendant Keker & Van Nest's Reply in further support thereof (Doc. No. 45).  For the

reasons stated below, the Motions are granted in part and denied in part as follows:

> 1.    Defendant Keker & Van Nest's Motion to Strike Paragraphs of the Complaint
>
>        (Doc. No. 31) and that portion of Defendant Iravani's Motion to Dismiss (Doc.
>
>        No. 56) that incorporates by reference Keker & Van Nest's Motion are granted in
>
>        part and denied in part.
>
> 2.    Defendants Chanin and ReputationDefender's Motion to Dismiss (Doc. No. 26),
>
>        Defendant Lemley's Motion to Dismiss (Doc. No. 32), and Defendant Iravani's
>
>        Motion to Dismiss (Doc. No. 56) are denied without prejudice.
>
> 3.    Defendants Rosen and Rosen & Associates' Motion to Dismiss (Doc. No. 30) is
>
>        denied with respect to Count I.
>
> 4.    Defendants Rosen and Rosen & Associates' Motion to Dismiss (Doc. No. 30) is
>
>        granted with respect to Count II.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

While attending law school from August 2004 to May 2007, Plaintiff Ciolli was involved

in the administration of the AutoAdmit website, an internet discussion board for the exchange of

information on institutions of higher education.  Beginning in 2005, pseudonymous visitors to

the AutoAdmit website began to post several sexually explicit messages about Brittan Heller

("Heller"), a female student at Yale Law School.  In 2007, Iravani, another female student at Yale

Law, was the subject of similar posts on AutoAdmit and was also listed on T14 Talent, a website

designed to rate the attractiveness of women from the top fourteen law schools in the country.

When Heller and Iravani failed to cause the removal of these posts from the Internet, they hired ReputationDefender, a public relations agency specializing in online reputation management.  Chanin, a director at ReputationDefender, handled some aspects of Heller and Iravani's matter.  As part of its representation, ReputationDefender launched a campaign to clean up AutoAdmit and to clear the posts directed at Heller and Iravani.  This campaign included advocating for the application of public pressure "on the administration of the University of Pennsylvania" to encourage Ciolli to remove "any and all references and photographs to named individuals on the AutoAdmit site and affiliated pages."  (Compl. ¶ 65 (quoting ReputationDefender website).)

Eventually, Heller and Iravani retained Lemley of the law firm of Keker & Van Nest and Rosen of the law firm of Rosen & Associates.  On June 8, 2007, Heller and Iravani filed a lawsuit in the United States District Court for the District of Connecticut (the "Connecticut Litigation")[1] against Plaintiff Ciolli and 28 pseudonymous individuals for harassing comments made about them in posts to the AutoAdmit and T14 Talent websites.  Following an investigation into the identity of the pseudonymous posters, Heller and Iravani amended their complaint on November 8, 2007, removing Plaintiff Ciolli and naming additional pseudonymous defendants.

Following his dismissal from the Connecticut Litigation, Plaintiff brought the instant

---

[1]  Doe I and Doe II v. Individuals Whose True Names Are Unknown, United States District Court for the District of Connecticut, Civ. No. 07-0909.

3

action in the Court of Common Pleas of Philadelphia County on March 5, 2008.  Defendants

removed to this Court on June 3, 2008 on diversity grounds.  The Complaint alleges wrongful

initiation of civil proceedings and abuse of process claims against Heller, Iravani, Lemley, Keker

& Van Nest, Rosen, and Rosen & Associates; libel, slander, publicity placing plaintiff in false

light, and tortious interference with contractual relations against Heller, Iravani, Chanin, and

ReputationDefender; and unauthorized use of name or likeness and publicity placing plaintiff in a

false light against T14 Talent.  (Compl. ¶¶ 156-218.)  By Order dated February 23, 2009, we

dismissed Heller as a defendant from the instant action because Plaintiff Ciolli had not

demonstrated good cause for his failure to serve her with the summons and complaint within the

time allotted by Federal Rule of Civil Procedure 4(m) and by the multiple extensions granted by

this Court.

  Now, several Defendants bring motions to dismiss.  Specifically, Chanin and Reputation

Defender bring a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack

of personal jurisdiction as well as Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief may be granted; Rosen and Rosen & Associates bring a motion to

dismiss pursuant to Rule 12(b)(6); Lemley brings a motion to dismiss pursuant to Rule 12(b)(2);

and Iravani brings a motion to dismiss pursuant to Rule 12(b)(6) as well as Rule 12(b)(2).  Keker

& Van Nest also brings a motion to strike certain paragraphs of Plaintiff's Complaint, which

Iravani has adopted by reference into her motion to dismiss.  There has been no response from

Defendant T14 Talent.

II.     LEGAL STANDARD

    A.     <u>Motion to Strike</u>

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A motion to strike is "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." <u>McInerney v. Moyer Lumber & Hardware</u>, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

    B.     <u>Motion to Dismiss</u>

Pursuant to Federal Rule of Civil Procedure 12(b), a party may assert several defenses by motion before filing a responsive pleading.  One such defense is the lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  A motion to dismiss for lack of personal jurisdiction "is inherently a matter which requires resolution of factual issues outside the pleadings." <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 66 n.9 (3d Cir. 1984).  "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." <u>Mellon Bank PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992).  To meet this burden, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987).  The plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence." <u>Time Share Vacation Club</u>, 735 F.2d at 66 n.9.

"Although the plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction," the court must accept any disputed facts in the light most favorable to the plaintiff. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (citations omitted).

A complaint may also be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), we must accept as true all factual allegations set forth in the complaint.  See Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions,'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks omitted).  In other words, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965) (ellipses in original).  Therefore, a claim may be dismissed when the facts alleged and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought.  See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).  The court may look to the allegations made in the complaint, the exhibits attached to the complaint, and any documents whose authenticity no party questions and whose contents are alleged in the complaint.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).  Documents attached to a defendant's Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the

6

plaintiff's complaint and if they are central to the plaintiff's claims.  Id.

III.     DISCUSSION

A.     Motion to Strike

Defendants Keker & Van Nest and Iravani seek to strike portions of Plaintiff's

Complaint[2] that discuss the substance[3] of three sets of settlement communications that took place

in the course of the Connecticut Litigation.  The first set of communications allegedly occurred

between Jarrett Cohen ("Cohen"), the owner of the AutoAdmit website and a non-party in the

Connecticut Litigation, and attorneys Rosen and Lemley.  According to the Complaint, Cohen

contacted Rosen and Lemley to inquire into the reasons behind the naming of Ciolli as a

defendant.  (Compl. ¶ 113.)  Plaintiff claims that Rosen and Lemley refused to give an

explanation but offered to drop Ciolli from the lawsuit if Cohen would delete the threads about

Heller and Iravani on AutoAdmit and "provide them with a wide range of concessions not related

to the litigation, such as creating a dispute resolution system for AutoAdmit and implementing a

terms [of] service or privacy policy."  (Id. ¶¶ 114, 116, 150.)

The next set of communications took place at a meeting in Philadelphia attended by

Iravani, Heller, Rosen, associates from Rosen & Associates and Keker & Van Nest, Cohen and

---

[2]     Specifically, Keker & Van Nest and Iravani seek to strike paragraphs 112-19, 126-35, 137, 139, 141-44, 149-51, and portions of paragraphs 176 and 178.

[3]     Keker & Van Nest explicitly states in its Motion that it only believes that "Ciolli's allegations of the substance of these communications . . . is improper and immaterial" and that it is "not moving to strike . . . Ciolli's allegations that communications regarding settlement took place among the parties."  (Def. Keker & Van Nest's Mot. Strike 8 n.6.)  Iravani adopted by reference these arguments.  (Def. Iravani's Mem. Supp. Mot. Dismiss 34.)

his attorney, and Ciolli and his attorney in the Connecticut Litigation, Marc Randazza

("Randazza").  (Id. ¶ 124.)  The Complaint states that, although Ciolli attended the meeting, he

was not a part of the actual negotiations.  (Id. ¶ 126.)  Allegedly, "when asked what . . . Iravani

and Heller wanted from . . . Ciolli as part of a potential settlement agreement, their attorneys

replied that their clients wanted 'nothing' from [Ciolli] but only wanted concessions from . . .

Cohen" in exchange for Ciolli's dismissal.  (Id. ¶ 128.)  These concessions included:

> [the institution of] a privacy policy and terms of service on the
> AutoAdmit message board, [the deletion of] all threads about . . .
> Iravani and Heller from the message board, [a] request that Google
> remove all threads about . . . Iravani and Heller from its search
> engine, [the removal of] all future threads about . . . Iravani and
> Heller within 14 days of the initial posting, . . . [the] logging [of] IPs
> on the AutoAdmit website, [the creation of] a dispute resolution
> system to arbitrate disputes . . . , and [the requirement] that . . . Cohen
> respond to all emails regarding AutoAdmit-related matters sent by
> anyone . . . within 14 days.

(Id. ¶ 129.)  Cohen allegedly refused the agreement, stating that Iravani and Heller were using

Ciolli as a hostage in order to secure a deal with Cohen that he would not otherwise make.  (Id. at

130-31.)

The Complaint also discusses the third set of communications, which took the form of

conversations between Randazza and Lemley.  According to the Complaint, Randazza contacted

Keker & Van Nest to ask, among other things, why Ciolli had been named as a defendant.  (Id. ¶

133.)  Randazza gathered that Ciolli had been thought to be one of the pseudonymous posters on

AutoAdmit.  (Id. ¶ 134.)  Later, Lemley allegedly contacted Randazza directly to "resolve . . .

Ciolli's participation in the case" and admitted that "Ciolli had been sued in error" as one of the

purported pseudonymous posters.  (Id. ¶ 137-39, 141.)  However, the Complaint claims that,

when Lemley again contacted Randazza, he stated that, "although . . . Iravani and Heller knew

that . . . Ciolli was not [a pseudonymous poster], one of [them] did not wish to drop . . . Ciolli

from the lawsuit because she was upset with him."  (Id. ¶ 144.)

Keker & Van Nest and Iravani assert that, because evidence of such settlement

discussions is inadmissible under Federal Rule of Evidence 408 ("FRE 408"), we should

therefore strike any allegations of such discussions as immaterial pursuant to Federal Rule of

Civil Procedure 12(f).  Thus, our first inquiry is whether the substance of the alleged settlement

negotiations would in fact be inadmissible under the Federal Rules of Evidence.  According to

FRE 408:

> (a) Prohibited uses.—Evidence of the following is not admissible on
> behalf of any party, when offered to prove liability for, invalidity of,
> or amount of a claim that was disputed as to validity or amount, or to
> impeach through a prior inconsistent statement or contraction: (1)
> furnishing or offering or promising to furnish—or accepting or
> offering or promising to accept—a valuable consideration in
> compromising or attempting to compromise the claim; and (2)
> conduct or statements made in compromise negotiations regarding the
> claim . . .
> (b) Permitted uses.—This rule does not require exclusion if the
> evidence is offered for purposes not prohibited by subdivision (a).
> Examples of permissible purposes include proving a witness's bias or
> prejudice; negating a contention of undue delay; and proving an effort
> to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.  Because it is "generally believed that settlement negotiations will be inhibited

if the parties are aware their statements may later be used as admissions of liability," FRE 408

acts to protect freedom of discussion during negotiations and thereby encourage settlements

among the parties.  Agnew v. Aydin Corp., No. 88-3436, 1988 WL 92872, at *3 (E.D. Pa. Sept.

6, 1988); see also Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 526 (3d Cir.

1995).

In determining whether the Federal Rules of Evidence would exclude the communications described above, we must first examine whether these communications constitute settlement negotiations as contemplated by FRE 408.  Throughout the Complaint, Plaintiff characterizes the discussions between Cohen and attorneys Rosen and Lemley, as well as the contacts between Ciolli's lawyer and Lemley, as settlement negotiations.  (Compl. ¶¶ 115, 118, 128, 130, 150, 176.)  Moreover, in his Memorandum of Law in Opposition to Defendant Keker & Van Nest's Motion, Plaintiff Ciolli continues to describe such communications as attempts at settlement and never argues that such communications could fall outside the scope of FRE 408.  (Pl.'s Mem. Opp'n Mot. Strike 2-3.)  Therefore, we accept that the discussions described in the paragraphs of the Complaint that Keker & Van Nest and Iravani seek to strike constitute settlement negotiations within the meaning of FRE 408.[4]

We should next determine whether Plaintiff Ciolli is seeking admission of these settlement negotiations for a prohibited or permitted use under FRE 408.  As expressed by FRE 408, the introduction of evidence of settlement negotiations is admissible for some purposes but not others.  Fed. R. Evid. 408.  One such prohibited purpose is to prove liability for a disputed claim.  See id.  Because there is no doubt that Plaintiff is seeking to use the content of these

---

[4]      If Plaintiff had decided to challenge the characterization of these communications as settlement negotiations under FRE 408, he most likely would have raised the status of Cohen as a non-party in the Connecticut Litigation.  However, there need not be ongoing or even threatened litigation for discussions to qualify as settlement negotiations.  Affiliated Mfrs., Inc., 56 F.3d at 527-28.  Rather, FRE 408 can apply even where an actual dispute or a mere difference of opinion exists.  Id.  Therefore, the fact that Cohen was a non-party in the Connecticut Litigation would not conclusively remove his discussions with Lemley and Rosen from the scope of FRE 408.

discussions to prove certain Defendants' liability for wrongful initiation of civil proceedings and

abuse of process in the instant action, it would seem at first glance that Plaintiff's introduction of

these settlement negotiations would be barred.  But Plaintiff argues that such use is not

prohibited by FRE 408 in the present case because the settlement negotiations he seeks to admit

took place in the course of the Connecticut Litigation and did not involve any admission of

liability in that action.  (Pl.'s Mem. Opp'n Mot. Strike 5-6.)  Thus, the issue to be resolved is

whether FRE 408 prohibits the introduction of evidence of settlement negotiations only where

offered to prove the liability for, invalidity of, or amount of the same case or claim being settled.

Courts across the country are split on this issue.  Compare Zurich Am. Ins. Co. v. Watts

Indus., Inc., 417 F.3d 682, 689 (7th Cir. 2005) (finding that "courts must consider the spirit and

purpose of [FRE 408] and decide whether the need for the settlement evidence outweighs the

potentially chilling effect on future settlement negotiations" and that this "balance is especially

likely to tip in favor of admitting evidence when the settlement communications at issue arise out

of a dispute distinct from the one for which the evidence is being offered"), Broadcort Capital

Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992) (affirming the admission of

settlement evidence where the evidence is related to an entirely different claim than the claim

under negotiation), and Vulcan Hart Corp. v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983) (finding

FRE 408 excludes settlement evidence only if offered to prove liability for or invalidity of the

claim under negotiation), with Williams v. Fermenta Animal Health Co., 984 F.2d 261, 264 (8th

Cir. 1993) (citing FRE 408 to affirm the district court's decision to exclude evidence of

settlement by defendant with a different plaintiff in a prior lawsuit as evidence of liability),

Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 655 (4th Cir. 1988) (holding that it was not

11

error for district court to exclude evidence of settlement negotiations in prior lawsuits arising out of the same transaction), Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co., 792 F.2d 1036, 1042 (11th Cir. 1986) (prohibiting the introduction of settlement negotiations from prior suits as acceptance of liability in a subsequent suit), Branch v. Fidelity & Cas. Co. of N.Y., 783 F.2d 1289, 1294 (5th Cir. 1986) ("The spectre of a subsequent use [of settlements] to prejudice a separate and distinct claim is a disincentive which [FRE 408] seeks to prevent."), and United States v. Contra Costa County Water Dist., 678 F.2d 90, 92 (9th Cir. 1982) (barring evidence of settlement negotiations in prior lawsuit in which "appellant was not a party").

The Court of Appeals for the Third Circuit has affirmed a district court's exclusion of settlement evidence from cases involving the same defendant and the same claim. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1246-47 (3d Cir. 1993). Thus, FRE 408 does not merely bar the introduction of settlement evidence in the same case previously negotiated; rather, FRE 408 may act to prevent the introduction of settlement evidence from one case to prove liability in a related case involving the same claims. However, the Third Circuit has not expressly addressed the situation in this case in which a plaintiff seeks to introduce evidence of settlement negotiations in an action raising a claim different from the one that was the subject of the negotiations.

Some district courts within the Third Circuit have addressed this issue. The court in Herman v. City of Allentown, 985 F. Supp. 569 (E.D. Pa. 1997), refused to bar the introduction of settlement evidence under FRE 408 because "the claim under negotiation in the settlement

12

[was] completely different than the claim at issue in the lawsuit."[5]  Herman, 985 F. Supp. at 577.

In other words, the court determined that the relatedness of the actions was important in

determining whether settlement evidence from one could be admitted in the other.  Similarly, the

court in Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1035 (D.N.J. 1995), concluded that, "where

cases [involving different claims] are [nevertheless] related, . . . [FRE 408] may exclude

settlement proposals in one from admission into evidence in the other."[6]  Lo Bosco, 891 F. Supp.

at 1038.  The Lo Bosco court made this conclusion based in part on the fact that "[t]he policy

behind [FRE 408] may be so strongly implicated in some situations that the spirit of the rule

would be violated by allowing evidence of settlement negotiations in a prior case to be admitted

into evidence."  Id. at 1039.

        We agree that the purposes of FRE 408 can necessitate the prohibition of evidence of

settlement discussions offered to prove the liability for, invalidity of, or amount of cases or

claims related to those cases or claims under negotiation.  We further believe that Ciolli's

---

        [5]        In Herman, the settlement evidence related to a prior lawsuit brought by a
firefighter union against the city for unlawful termination of a firefighter resulting from the city's
erroneous belief that that firefighter was engaged in illegal drug use.  985 F. Supp. at 577.  When
the city failed to rehire the firefighter as promised in the settlement agreement, the firefighter
himself brought the subsequent lawsuit under the Americans with Disabilities Act at issue in
Herman.  Id.  The court found that these cases were completely different and that therefore
evidence of the settlement in the first case was admissible in the second case.  Id.

        [6]        In Lo Bosco, the plaintiff brought claims for breach of contract and fraud against
his wife and his wife's father.  891 F. Supp. at 1036-37  His wife had previously filed a petition
for divorce, and in an attempt at reconciliation, the plaintiff had written letters to his wife in
which he admitted to the invalidity of his threatened claims against his wife and her father.  Id.
After the plaintiff brought the contract action, the wife and her father sought to introduce these
letters.  Id. at 1037.  The court in Lo Bosco determined that these letters constituted an "offer of
compromise of the impending divorce action" and were "not admissible as an admission of [the]
plaintiff as to the factual predicate of his claim."  Id. at 1038-39.

wrongful initiation of civil proceedings and abuse of process claims are sufficiently related to the Connecticut Litigation as to require the inadmissibility of settlement evidence from that suit. Part of an effective settlement process is a frank discussion of the relative merits of each party's case. If parties were permitted to take the content of these negotiations and use them in subsequent litigation for wrongful initiation of civil proceedings or abuse of process, then counsel would put themselves and their clients at risk of suit in every settlement conference in which they participate, resulting in either less effective or even non-existent negotiations. This is precisely the situation that FRE 408 is designed to avoid.

Further, even if we assume that FRE 408 only applies to settlement communications offered as proof of liability for, invalidity of, or amount of the negotiated claims, Ciolli is attempting to do just that. Ciolli's claims for wrongful initiation of civil proceedings and abuse of process are essentially causes of action asserting the invalidity of the claims in the Connecticut Litigation. In other words, Ciolli is attempting to use evidence of settlement negotiations to prove the invalidity of the negotiated claim, albeit in support of his allegations in this case. Thus, for all these reasons, we find that FRE 408 would bar the introduction of settlement negotiations from the Connecticut Litigation to prove the liability of defendants in the instant action for wrongful initiation of civil proceedings and abuse of process.

Ciolli insists that the substance of the settlement negotiations is admissible because he would seek introduction of this evidence for permissible uses under FRE 408—namely, to establish the intent, motivation, knowledge, state of mind, and good faith of Defendants Iravani, Lemley, Keker & Van Nest, Rosen, and Rosen & Associates in bringing suit against him—and not simply to prove liability. (Pl.'s Mem. Opp'n Mot. Strike at 5-6.) While it is true that courts

14

will admit settlement evidence pursuant to FRE 408 for purposes of demonstrating knowledge or intent, see Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 689 (7th Cir. 2005), the court's admission of settlement evidence for such purposes is discretionary, see Fed. R. Civ. P. 408 (stating that the rule "does not require exclusion if the evidence is offered for purposes not prohibited"); Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 528 (3d Cir. 1995) (discussing the trial court's discretion in applying FRE 408).  However, when the applicability of FRE 408 is a close call, courts have held that exclusion is preferred.  Affiliated Mfrs., 56 F.3d at 528 (citing Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1364 (10th Cir. 1987)).

Plaintiff is merely attempting to repackage evidence that is so obviously related to liability in order to skirt the bounds of FRE 408.  See Power Auth. of N.Y. v. United States, 62 Fed. Cl. 376, 379 (2004) (stating that the "[p]laintiff's characterization of the [settlement negotiations] as evidence of 'intent' amounts to a mere ritual intonation of permissible purpose but in substance does not establish an exception to [FRE] 408").  Where a seemingly permissive purpose under FRE 408 ultimately bears on an element of liability, exclusion applies.  See Trebor v. Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989) (finding a permitted purpose and a prohibited purpose "so closely intertwined" that admission of the settlement evidence would "militate against the public policy considerations which favor settlement negotiations and which underlie [FRE 408]").  Otherwise, the introduction of such evidence would undermine the purposes of FRE 408 as discussed above.  For these reasons and given the fact that any doubt should be resolved in favor of exclusion, we cannot permit Plaintiff to proceed in this manner.

Having found that FRE 408 would preclude admission of the three sets of settlement

communications, we must next consider whether to strike allegations referring to these communications in Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f). Several courts have granted motions to strike such allegations as immaterial.  See, e.g., Bergman v. Jefferson-Pilot Life Ins. Co., No. 03-4459, 2003 WL 23142155, at *1 (E.D. Pa. Dec. 30, 2003); Scott v. Twp. of Bristol, No. 90-1412, 1991 WL 40354, at *5 (E.D. Pa. Mar. 20, 1991); Agnew v. Aydin Corp., No. 88-3436, 1988 WL 92872, at *4 (E.D. Pa. Sept. 6, 1988).  Therefore, it seems appropriate to strike portions of Plaintiff's Complaint that allege evidence of settlement negotiations.  However, Defendant Keker & Van Nest and Iravani only challenge the allegations discussing the substance of these communications and not the allegations noting the fact that settlement negotiations took place among the parties.  (Def. Keker & Van Nest's Mot. Strike 8 n.6.)  Because a motion to strike is disfavored, we will strike only those allegations that specifically state the content of the settlement negotiations in the Connecticut Litigation.

Thus, we only strike the following allegations of the Complaint: the second sentence of paragraph 112, paragraphs 113-14, paragraph 116, paragraph 118 but only beginning with the word "informing," paragraphs 127-35, paragraph 139, paragraph 141-44, the portion of paragraph 149 beginning with the word "after" and ending with the word "litigation," paragraph 150 but only beginning with the word "stating," paragraph 151, those portions of paragraph 176 that read "[b]ecause the only consideration ever offered Mr. Cohen was dismissal of the lawsuit against Mr. Ciolli" as well as "which would have made it impossible to obtain the desired concessions from Mr. Cohen that were completely unrelated to the cause of action sued upon," and those portions of paragraph 178 that read "yet sought and obtained this extension to once again continue their leverage over Mr. Cohen, a non-party in the Connecticut Litigation, who

16

they were still attempting to coerce into settlement" as well as "[s]ince the only consideration ever offered Mr. Cohen was dismissal of the lawsuit against Mr. Ciolli, Defendants knew that, if forced to submit an amended complaint on October 6, 2007, or to serve Ciolli with the original complaint, they would lose their leverage over Mr. Cohen and not obtain any of the concessions they were requesting from him."

      B.    <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

Defendants Chanin, ReputationDefender, Lemley, and Iravani assert that they lack the minimum contacts required for the exercise of personal jurisdiction over them in Pennsylvania. Plaintiff Ciolli disagrees and argues that there is specific jurisdiction over each of these Defendants and that there is general jurisdiction over ReputationDefender and Iravani. Plaintiff further claims that Defendants waived their right to raise the personal jurisdiction defense. Specifically, he claims that Defendants Chanin, ReputationDefender, and Lemley waived their defense of personal jurisdiction when they made a motion to stay these proceedings pending the resolution of the Connecticut Litigation and that Defendant Iravani waived her defense of personal jurisdiction when she failed to timely answer, move, or otherwise respond to Plaintiff's Complaint

        i.    Waiver

We will address the Iravani waiver argument first. Plaintiff alleges in his Memorandum of Law in Opposition to Defendant Iravani's Motion to Dismiss that, "[i]t is well established that, as a general rule, a defendant is deemed to have waived her defense[] of lack of personal jurisdiction . . . when the plaintiff has submitted the requisite Rule 55(a) affidavit demonstrating the defendant's default prior to submission of the defendant's Rule 12(b)(2) motion." (Pl.'s

Mem. Opp'n Def. Iravani's Mot. Dismiss 2.)  Plaintiff asserts that his affidavit of service

submitted on October 7, 2008 in response to our Order on September 23, 2008 requiring proof of

service demonstrated that Iravani was in default by failing to timely respond after service

occurred on June 30, 2008.  (Id. at 3.)

      There are several problems with Plaintiff's argument.  But it will suffice to point out that

Plaintiff failed to discuss the fact that Plaintiff Ciolli and Defendant Iravani entered into a

stipulation on October 17, 2008 whereby the parties agreed that Iravani accepted service as of

October 17, 2008 and retained the defense of personal jurisdiction.  Taking October 17, 2008 as

the start to Iravani's time to answer, move, or otherwise respond to Ciolli's Complaint as well as

taking into account the stipulation dated November 6, 2008 granting Iravani a one-week

extension, her motion to dismiss was timely filed.  Iravani was not in default, and thus, Plaintiff's

waiver argument fails.

      Next, we will consider whether the motion to stay filed by Defendants Chanin,

ReputationDefender, and Lemley waived their personal jurisdiction defense.  A defendant can

waive the requirement of personal jurisdiction via his voluntary or involuntary actions.  Bel-Ray

Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 443 (3d Cir. 1999) (quoting Ins. Corp. of Ir. v.

Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-05 (1982)).  Although parties frequently

waive personal jurisdiction by failing to comply with Federal Rule of Civil Procedure 12(h), a

party will also "normally submit[] itself to the jurisdiction of the court with respect to the

adjudication of claims arising from the same subject matter" by seeking "affirmative relief from

[the] court."  Id. (citing Adam v. Saenger, 303 U.S. 59 (1938)); see also In re Texas E.

Transmission Corp. PCB Contamination Ins. Coverage, 15 F.3d 1230, 1236 (3d Cir. 1994) ("[A]

party is deemed to have consented to personal jurisdiction if the party actually litigates the

underlying merits or demonstrates a willingness to engage in extensive litigation in the forum.").

Thus, waiver can occur "even where the defendant raise[d] his personal jurisdiction defense at

the earliest point required by the Federal Rules." Bel-Ray, 181 F.3d at 443 (citing Wyrough &

Loser, Inc. v. Pelmor Labs., Inc., 376 F.2d 543, 547 (3d Cir. 1967)).  However, it also follows

that the mere filing of a motion does not necessarily constitute a waiver of the personal

jurisdiction defense.  Tracinda Corp. v. Daimlerchrysler AG, 197 F. Supp. 2d 86, 91 (D. Del.

2002).

Because Defendants asserted their personal jurisdiction defense in accordance with

Federal Rule of Civil Procedure 12,[7] the only issue in determining whether such defense has been

waived is whether Defendants' Motion to Stay sought affirmative relief from this Court such that

they submitted to our jurisdiction.  The Third Circuit has concluded that affirmative relief is

implicated where the court "considers the merits or quasimerits of a controversy."  Wyrough &

Loser, 376 F.2d at 547 (finding that a party participating in a preliminary injunction hearing

waived its personal jurisdiction defense).  In determining whether to issue a stay, we examined

three factors: (1) the promotion of judicial economy; (2) the balance of harm to the parties; and

---

[7]        According to Federal Rule of Civil Procedure 12(h), a party waives the defense of
lack of personal jurisdiction by omitting it from a motion made under Federal Rule of Civil
Procedure 12.  A motion to stay is not one of the motions listed in Federal Rule of Civil
Procedure 12 and thus does not constitute a motion made pursuant to this Rule.  Fed. R. Civ. P.
12; AFN, Inc. v. Schlott, Inc., 798 F. Supp. 219, 222 n.4 (D.N.J. 1992).  As a result, Defendants
did not waive their personal jurisdiction defense under Federal Rule of Civil Procedure 12(h) by
omitting it from their motion to stay and then raising it in their motion to dismiss.  Plaintiff does
not seem to dispute this conclusion; rather, he argues that Defendants submitted to the
jurisdiction of this Court by seeking affirmative relief in the form of a stay of proceedings.  (Pl.'s
Mem. Opp'n Def. Lemley's Mot. Dismiss 2-3; Pl.'s Mem. Opp'n Defs. Chanin &
ReputationDefender's Mot. Dismiss 2-3.)

19

(3) the duration of the requested stay.  (Mem. Stay at 4, Sept. 23, 2008 (citing <u>SmithKline</u>

<u>Beecham Corp. v. Apotex Corp.</u>, No. 99-CV-4304, 2004 U.S. Dist. LEXIS 13907, at *23-24

(E.D. Pa. Jul. 16, 2004)).)  None of these factors required an examination of the merits or even

the quasimerits of the action.  At most, this Court compared the causes of action brought by the

plaintiffs in the Connecticut Litigation with the causes of action brought by Ciolli in the instant

action, but in no way did this Court comment on the merits of these causes of action.  Indeed, by

requesting the stay, Defendants sought to postpone this Court's consideration of the merits.

Thus, we find Defendants' Motion to Stay did not seek affirmative relief.[8]

Plaintiff insists that Defendants must have waived personal jurisdiction because, without

jurisdiction, this Court could not have issued the stay.  (Pl.'s Mem. Opp'n Def. Lemley's Mot.

Dismiss 3-4; Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss 4-5.)

However, the cases that Plaintiff cites for this proposition deal with subject matter jurisdiction

---

[8]      Plaintiff cites many state cases that he claims support his view that this Court's
Order on Defendants' Motion to Stay constitutes affirmative relief.  (Pl.'s Mem. Opp'n Def.
Lemley's Mot. Dismiss 2-3; Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot.
Dismiss 3.)  However, the issue of waiver is decided by federal law, and thus, these cases are not
relevant.  <u>See</u> <u>Orange Theatre Corp. v. Rayhertz Amusement Corp.</u>, 139 F.2d 871, 874 (3d Cir.
1943) (applying federal rules).
        Plaintiff does cite one federal case, <u>Friedman v. Estate of Presser</u>, 929 F.2d 1151
(6th Cir. 1991), that he believes states that participation in a motion to stay constitutes an
appearance that will waive the personal jurisdiction defense.  (Pl.'s Mem. Opp'n Def. Lemley's
Mot. Dismiss 3; Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss 3-4.)
However, Plaintiff overstates the dictum in this case.  The court in <u>Friedman</u> merely noted that,
"as [the defendant's] *first* pleading specifically contested the insufficiency of service of process,
it cannot be plausibly contended that he waived [Federal Rule of Civil Procedure 4's]
requirements and thereby submitted to the district court's jurisdiction."  <u>Friedman</u>, 929 F.2d at
1157 n.7.  This statement is a far cry from finding that waiver would result from a failure to
assert a defense under Federal Rule of Civil Procedure 12(b) before participating in a motion to
stay.

and thus are inapposite.[9]  We also note that we clearly had the authority to rule on the Motion to

Stay because several Defendants joined the Motion to Stay who did not subsequently bring a

motion to dismiss for lack of personal jurisdiction.

Thus, no Defendant has waived the defense of lack of personal jurisdiction in this matter.

Because Plaintiff may not rely on Defendants' waiver for the exercise of personal jurisdiction, he

must establish either general or specific personal jurisdiction over Defendants.

        ii.     General and Specific Jurisdiction

Although the plaintiff has the burden to establish personal jurisdiction over the defendant

using competent evidence or sworn affidavits, the plaintiff has the right to conduct jurisdictional

discovery where he "presents factual allegations that suggest 'with reasonable particularity' the

possible existence of the requisite contacts between the party and the forum state." Toys "R" Us

v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).  The rationale for this rule is that many

jurisdictional facts are in the exclusive control of the defendant and that, without the benefit of

discovery, the plaintiff may be unable to meet his burden in establishing personal jurisdiction.

Compagnie des Bauxites de Guinee v. L'Union Atlantiques S.A. d'Assurances, 723 F.2d 357,

362 (3d Cir. 1983) (citing Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255-56 (1st Cir.

1966)).

In his Memoranda of Law Opposing Defendants' Motions to Dismiss, Plaintiff fails to

---

       [9]      Plaintiff does cite one case that deals with personal jurisdiction.  However, this case did not state that personal jurisdiction must be considered before any stay as Plaintiff implies; rather, this case just happened to resolve the personal jurisdiction issue before moving to discuss the arbitration stay where these motions were brought simultaneously.  Am. Graphics Inst., Inc. v. Darling, No. 03-374, 2003 U.S. Dist. LEXIS 9790 (E.D. Pa. May 20, 2003) (Davis, J.).

include any affidavits and only attaches copies of ReputationDefender's website and an e-mail

sent by Lemley as evidence.  Instead, in arguing that personal jurisdiction over Defendants

ReputationDefender, Chanin, Lemley, and Iravani exists, Plaintiff relies on the facts asserted by

Defendants in their Motions to Dismiss and in sworn declarations attached to those Motions.  He

also states that more detail is not possible because "he has not had the opportunity to obtain

jurisdictional discovery from Defendants."  (Pl.'s Mem. Opp'n Defs. Chanin &

ReputationDefender's Mot. Dismiss 7 n.4.)  He further discusses the need for "jurisdictional

discovery from Defendants in order to provide this court with a complete record" for

jurisdictional facts such as ReputationDefender's website.  (Id. at 10.)  The Third Circuit has

determined that a plaintiff's statement noting that "no discovery has taken place in this matter"

and that "the court has the discretion to dismiss the [m]otion as premature, or set a period for

discovery on issues relevant to the instant matter" adequately asserted a plaintiff's position on the

need for jurisdictional discovery.  See Renner v. Lanard Toys Ltd., 33 F.3d 277, 283 (3d Cir.

1994).  Therefore, we construe the statements made by Plaintiff as a request for jurisdictional

discovery in this matter.

Plaintiff has presented sufficient factual allegations to demonstrate the need for

jurisdictional discovery in this case.  Defendants Chanin, ReputationDefender, Lemley, and

Iravani have all admitted to, and Plaintiff has alleged the existence of, some contact with

Pennsylvania that potentially supports the exercise of personal jurisdiction.  Plaintiff should have

the opportunity to investigate the extent of these contacts and their relation to his claims.  The

scope of jurisdictional discovery however is limited to determining whether there is general

jurisdiction over ReputationDefender, specific jurisdiction over ReputationDefender, Chanin,

Lemley, and Iravani, and both general and specific jurisdiction by imputation over Iravani,

because these are the only forms of jurisdiction over Defendants that Plaintiff has alleged.

      C.     <u>Motion to Dismiss for Failure to State a Claim</u>

      Although we defer the resolution of Defendants ReputationDefender, Chanin, and

Iravani's Motions to Dismiss, we can decide the merits of Defendants Rosen and Rosen &

Associates' Motion to Dismiss as these Defendants have not challenged personal jurisdiction.

Plaintiff's Complaint brings two counts against Defendants Rosen and Rosen & Associates, and

Defendants move to dismiss both counts.

      i.     Wrongful Initiation of Civil Proceedings (Count I)

      Pennsylvania's Dragonetti Act, 42 Pa. Cons. Stat. Ann. §§ 8851-54, codified the common

law tort of wrongful use of civil proceedings.  <u>Schmidt v. Currie</u>, 470 F. Supp. 2d 477, 480 (E.D.

Pa. 2005).  Under this statute:

> A person who takes part in the procurement, initiation or continuation
> of civil proceedings against another is subject to liability to the other
> for wrongful use of civil proceedings [where]:
> (1) He acts in a grossly negligent manner or without probably cause
> and primarily for a purpose other than that of securing the proper
> discovery, joinder of parties or adjudication of the claim in which the
> proceedings are based; and
> (2) The proceedings have terminated in favor of the person against
> whom they are brought.

42 Pa. Cons. Stat. Ann. § 8851(a).  An attorney who brings a case, or who takes any steps in the

proceedings, on behalf of his client "is not liable if he ha[d] probable cause for his action."

<u>Shaffer v. Stewart</u>, 473 A.2d 1017, 1020 (Pa. Super. Ct. 1984); <u>see also</u> <u>Broadwater v. Sentner</u>,

725 A.2d 779, 782 (Pa. Super. Ct. 1999).  Even without probable cause however, an attorney is

still not liable where "he acts primarily for the purpose of aiding his client in obtaining a proper

adjudication of his claim."  <u>Broadwater</u>, 725 A.2d at 784.

The complaint in the Connecticut Litigation[10] brought the following claims against the

defendants in that action: copyright infringement, appropriation of another's name or likeness,

unreasonable publicity given to another's life, publicity that places another in a false light before

the public, intentional infliction of emotional distress, negligent infliction of emotional distress,

and defamation.  (Pl.'s Mem. Opp'n Defs. Rosen & Rosen & Associates Mot. Dismiss, Ex. A.)

None of these causes of action relate to Ciolli's position as Chief Education Director at

AutoAdmit or to any authority he had to remove offending posts to that website.  Rather, these

causes of action were brought against Ciolli and the pseudonymous posters for their involvement

in the organization of the T14 Talent website and for their posts about Heller and Iravani on both

T14 Talent and AutoAdmit.

Plaintiff claims in his Complaint that Rosen and Rosen & Associates did not have

probable cause to name him as a defendant in the Connecticut Litigation.  According to Plaintiff,

the plaintiffs in the Connecticut Litigation claimed to have brought suit against him because they

believed he was "pauliewalnuts," a pseudonymous individual who created the T14 Talent

website.  (Compl. ¶¶ 34, 49, 146.)  Plaintiff claims however that Heller, Iravani, and their

lawyers knew that Ciolli was not "pauliewalnuts," was not involved in the organization of the

T14 Talent website, and had never made any posts to any website about Heller and Iravani.  (<u>Id.</u>

¶¶ 159, 162-63.)  He supports this conclusion with the following factual allegations: in a March

---

[10]      We may consider the complaint in the Connecticut Litigation at this stage without
converting the motion to dismiss into a motion for summary judgment because it is an
indisputably authentic document related to Ciolli's claims.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 223
(3d Cir. 2004).

3, 2007 email, Chanin, as an agent of Heller and Iravani, told Ciolli that no one at

ReputationDefender believed that he started the T14 Talent website; in a Washington Post

article, Iravani stated that T14 Talent was a separate site, and the article further reported that

Ciolli had persuaded "pauliewalnuts" to shut down the site; in an essay for the *Yale Journal of*

*Law & Feminism*, Heller acknowledged that Ciolli and the organizers of the T14 Talent website

were different people; and the complaint filed in the Connecticut Litigation failed to specifically

discuss any wrongdoing on the part of Ciolli.[11]   (Compl. ¶ 54, 57, 60, 101.)

An individual has probable cause for the procurement, initiation, or continuation of civil

proceedings under the Dragonetti Act where he "reasonably believes in the existence of the facts

upon which the claim is based, and also:

> (1) Reasonably believes that under those facts the claim may be valid
> under the existing or developing law;
> (2) Believes to this effect in reliance upon the advice of counsel,
> sought in good faith and given after full disclosure of all relevant
> facts within his knowledge and information; or
> (3) Believes as an attorney of record, in good faith that his
> procurement, initiation or continuation of a civil cause is not intended
> to merely harass or maliciously injure the opposite party.

42 Pa. Cons. Stat. Ann. § 8352.  Taking Plaintiff's allegations as true, as we must at this stage in

the litigation, we cannot say that Rosen and Rosen & Associates had probable cause to bring the

Connecticut Litigation.  As described above, Plaintiff's Complaint adequately establishes that

Heller and Iravani knew that Ciolli was not associated with T14 Talent and had never made

defamatory posts about them on any website.  Because they allegedly knew that Ciolli was not

involved, Heller and Iravani did not reasonably have probable cause to assert that he was.  Thus,

---

[11]     We do not consider those allegations that were stricken in our consideration of
Defendant Keker & Van Nest's Motion to Strike.

Plaintiff's allegations support the fact that Heller and Iravani did not have probable cause to assert the causes of action alleged in the Connecticut Litigation against Ciolli.

Defendants Rosen and Rosen & Associates argue that, as lawyers, they were entitled to rely in good faith on statements made by their clients and that therefore, even if Heller and Iravani knew that there was no probable cause to bring the Connecticut Litigation against Ciolli, Rosen and Rosen & Associates are not also liable. (Defs. Rosen & Rosen & Associates Mem. Supp. Mot. Dismiss 6.) However, as we have already determined that the Complaint adequately alleges that Heller and Iravani knew that Ciolli was not involved in the organization of T14 Talent or the offensive posts, we cannot assume that Heller and Iravani nevertheless told their lawyers a different story and that Rosen and Rosen & Associates relied on such statements in good faith. Because Rosen and Rosen & Associates bring a motion to dismiss, we must draw all reasonable inferences in Plaintiff's favor. It is reasonable to infer that, if Heller and Iravani knew that there was no probable cause to bring suit against Ciolli, then their lawyers knew it too. Thus, we find that the allegations of the Complaint support the fact that Defendants Rosen and Rosen & Associates lacked probable cause to bring the Connecticut Litigation against Ciolli.[12]

Having found that Defendants Rosen and Rosen & Associates lacked probable cause, we must determine whether they acted for an improper purpose. In identifying an improper purpose, Plaintiff alleges that Defendants pursued the Connecticut Litigation against him in order to

---

[12]      In their Motion to Dismiss, Defendants Rosen and Rosen & Associates focus on facts alleged in the Complaint that demonstrate the reasonableness of their belief that Ciolli was "pauliewalnuts." (Defs. Rosen & Rosen & Associates Mem. Supp. Mot. Dismiss 6-9.) However, such facts are irrelevant when we must make all reasonable inferences in Plaintiff's favor and when one such reasonable inference is that Rosen and Rosen & Associates actually knew that Plaintiff was not "pauliewalnuts."

"extract concessions from" Cohen and AutoAdmit.  (Pl.'s Mem. Opp'n Defs. Rosen & Rosen & Associates Mot. Dismiss 13-14.)  Although we have striken many of the factual allegations supporting this assertion in deciding Keker & Van Nest's Motion to Strike, we think that the purpose identified by Plaintiff for naming him as a defendant in the Connecticut Litigation is nevertheless reasonably inferred from the remaining allegations.[13]  The question is whether joining a party over whom there is no probable cause in order to obtain concessions from a non-party constitutes an improper purpose.

"An improper purpose may be inferred where the action is filed without justification." Broadwater, 725 A.2d at 284 (citing Gentzler v. Atlee, 660 A.2d 1378, 1382 n.6 (Pa. Super. Ct. 1995)).  Moreover, whether an alleged purpose is improper is an issue for the jury to decide. Bannar v. Miller, 701 A.2d 242, 249 (Pa. Super. Ct. 1997).  Defendants Rosen and Rosen & Associates have identified no cases where their conduct would be proper as a matter of law.  In fact, the initiation of a suit to force an unrelated settlement has been recognized as an example of improper purpose.  Shaffer v. Stewart, 473 A.2d 1017, 1021 (Pa. Super. Ct. 1984) (quoting Restatement (Second) of Torts § 676 cmt. c).  Generally, cases recognizing settlement as an improper purpose involve the filing of nuisance suits to either coerce the defendant into settling the baseless claim rather than deal with the expense of litigation or to coerce the defendant into settling unrelated claims.  We think that the reasoning behind those cases extends to the present

---

[13]      While Plaintiff can no longer rely on allegations such as "[w]hen asked what Defendants Iravani and Heller wanted from Mr. Ciolli as part of a potential settlement agreement, their attorneys replied that their clients wanted 'nothing' from Plaintiff, but only wanted concessions from Mr. Cohen," Plaintiff's other allegations support the idea that Defendants were interested in settling with Cohen despite the fact that he was not a named defendant but were not interested in talking to Ciolli about such matters.  (Compl. ¶¶ 125-26, 128.)

situation—where a case is filed without probable cause for the purpose of coercing the settlement of unrelated claims by a non-party.  For these reasons, we find that the improper purpose identified by Plaintiff will support his claim for wrongful initiation of civil proceedings.

Defendants Rosen and Rosen & Associates make two further arguments in their Motion to Dismiss Plaintiff's claim for wrongful initiation of civil proceedings.  First, Defendants claim that Plaintiff cannot prove any damages because, at the time the case against him was dismissed, he had yet to be served with the Complaint.  (Defs. Rosen & Rosen & Associates Mem. Supp. Mot. Dismiss 18-20.)  According to the Dragonetti Act, the following can serve as damages:

> (1) The harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings.
> (2) The harm to his reputation by any defamatory matter alleged as the basis of the proceedings.
> (3) The expense, including any reasonable attorney fees, that he has reasonably incurred in defending himself against the proceedings.
> (4) Any specific pecuniary loss that has resulted from the proceedings.
> (5) Any emotional distress that is caused by the proceedings.
> (6) Punitive damages according to law in appropriate cases.

42 Pa. Cons. Stat. Ann. § 8353.  The Complaint alleges that Ciolli retained a lawyer, Randazza, who attempted to take part in the August 7, 2007 meeting in Philadelphia and who contacted Defendants Lemley and Keker & Van Nest on at least one occasion (Compl. ¶¶ 124, 137-38.) Such allegations are sufficient to establish that Ciolli incurred some expense in defending himself in the Connecticut Litigation.

Second, Defendants Rosen and Rosen & Associates assert that application of the Dragonetti Act to attorneys would be in violation of the Pennsylvania Constitution.  Defendants

base their argument on the Pennsylvania Supreme Court's plurality decision in <u>Beyers v.</u> <u>Richmond</u>, 937 A.2d 1082 (Pa. 2007), which found that it was unconstitutional for the legislature to regulate the conduct of attorneys through the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). <u>Beyers</u>, 937 A.2d at 1092. This plurality opinion was based on Article V of the Pennsylvania Constitution, which has been interpreted to give the Pennsylvania Supreme Court the exclusive power to govern the conduct of attorneys practicing law in Pennsylvania. <u>Id.</u> at 1089 (quoting <u>Lloyd v. Fishinger</u>, 605 A.2d 1193, 1196 (Pa. 1992)). Even if we were to find that the Dragonetti Act is unconstitutional as applied to Pennsylvania lawyers, the application of the Dragonetti Act would not be unconstitutional as applied to Defendants Rosen and Rosen & Associates. Rosen & Associates is a Connecticut law firm with its principal place of business in Connecticut. Rosen is licensed to practice in Connecticut. The underlying action is being litigated in Connecticut. There is simply no connection to Pennsylvania that would bring Defendants Rosen and Rosen & Associates under the disciplinary authority of the Pennsylvania Supreme Court. Thus, Defendants Rosen and Rosen & Associates' argument pursuant to the Pennsylvania Constitution is not appropriate in this case.

        ii.     Abuse of Process (Count II)

The common law tort of abuse of process is defined as the perversion of legal process after it has begun "primarily to accomplish a purpose for which it is not designed." <u>Werner v.</u> <u>Plater-Zyberk</u>, 799 A.2d 776, 785 (Pa. Super. Ct. 2002); <u>see also</u> <u>Al Hamilton Contracting Co. v.</u> <u>Cowder</u>, 644 A.2d 188, 191 (Pa. Super. Ct. 1994). In other words, abuse of process involves the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." <u>Al Hamilton Contracting Co.</u>, 644 A.2d at 191 (quoting <u>McGee v. Feege</u>,

535 A.2d 1020, 1026 (Pa. 1987)).  The plaintiff cannot rely on the defendant's "bad or malicious intentions"; "[r]ather there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." Id. at 192 (citing Rosen v. Tesoro Petroleum Corp., 582 A.2d 27, 32-33 (Pa. Super. Ct. 1990)).  "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion." Shaffer, 473 A.2d at 1019 (quoting DiSante v. Russ Financial Co., 380 A.2d 439, 441 (Pa. Super. Ct. 1977)).

Plaintiff argues that three motions for extensions of time to submit an amended complaint and one motion for an extension of time to serve Ciolli constitute the process that Defendants Rosen and Rosen & Associates allegedly abused in order to obtain concessions from Cohen.[14] (Compl. ¶¶ 172-78.)  This is not abuse of process.  Defendants were not using the extensions of time as tactical weapons in the same way that attachment, execution, and garnishment can be used for extortion or arrest and criminal prosecution can be used for blackmail. See Zappala v. Hub Foods, Inc., 683 F. Supp. 127, 129 (W.D. Pa. 1988).  Defendants were not using the threat of motions for extensions of time to coerce Cohen into making the requested concessions. Rather, Plaintiff is arguing that the existence of the suit itself was designed to coerce Cohen into making these concessions.  Thus, to the extent that Ciolli has a claim against Defendants Rosen and Rosen & Associates, it is for wrongful initiation of civil proceedings, not for abuse of process.

IV.    CONCLUSION

---

[14]     Again, we do not consider those allegations that were stricken in our consideration of Defendant Keker & Van Nest's Motion to Strike.

Accordingly, Defendant Keker & Van Nest's Motion to Strike Paragraphs of the Complaint (Doc. No. 31) and that portion of Defendant Iravani's Motion to Dismiss (Doc. No. 56) that incorporates by reference Keker & Van Nest's Motion is granted in part and denied in part.  Thus, the following portions of Plaintiff's Complaint are stricken: the second sentence of paragraph 112, paragraphs 113-14, paragraph 116, paragraph 118 but only beginning with the word "informing," paragraphs 127-35, paragraph 139, paragraph 141-44, the portion of paragraph 149 beginning with the word "after" and ending with the word "litigation," paragraph 150 but only beginning with the word "stating," paragraph 151, those portions of paragraph 176 that read "[b]ecause the only consideration ever offered Mr. Cohen was dismissal of the lawsuit against Mr. Ciolli" as well as "which would have made it impossible to obtain the desired concessions from Mr. Cohen that were completely unrelated to the cause of action sued upon," and those portions of paragraph 178 that read "yet sought and obtained this extension to once again continue their leverage over Mr. Cohen, a non-party in the Connecticut Litigation, who they were still attempting to coerce into settlement" as well as "[s]ince the only consideration ever offered Mr. Cohen was dismissal of the lawsuit against Mr. Ciolli, Defendants knew that, if forced to submit an amended complaint on October 6, 2007, or to serve Ciolli with the original complaint, they would lose their leverage over Mr. Cohen and not obtain any of the concessions they were requesting from him."

Defendants Chanin and ReputationDefender's Motion to Dismiss (Doc. No. 26), Defendant Lemley's Motion to Dismiss (Doc. No. 32), and Defendant Iravani's Motion to Dismiss (Doc. No. 56) are denied without prejudice so that Plaintiff may conduct jurisdictional discovery before we decide these motions.  Plaintiff is granted leave to conduct jurisdictional

discovery, which shall be completed on or before April 30, 2009.  Defendants shall file any renewed motion to dismiss on or before May 14, 2009.  Plaintiff shall file his response to any renewed motion to dismiss on or before May 28, 2009.  Extensions will not likely be granted.

Finally, Defendants Rosen and Rosen & Associates' Motion to Dismiss (Doc. No. 30) is denied with respect to Count I.  Defendants Rosen and Rosen & Associates' Motion to Dismiss (Doc. No. 30) is granted with respect to Count II such that Plaintiff's claim for abuse of process is dismissed without prejudice.  Any motion for leave to amend the complaint with respect to Count II shall be made on or before April 14, 2009.

An appropriate order follows.