IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY CIOLLI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HEIDE IRAVANI, et al. | : | NO. 2:08-cv-02601 |

Legrome D. Davis, J.                                                    August 27, 2009

MEMORANDUM

Presently before the Court are Defendants Ross Chanin ("Chanin") and

ReputationDefender Inc.'s ("ReputationDefender") Motion to Dismiss (Doc. Nos. 70-71),

Plaintiff Anthony Ciolli's ("Ciolli") Memorandum of Law in Opposition thereto (Doc. No. 79),

Defendants Chanin and ReputationDefender's Reply in further support thereof (Doc. No. 84),

Defendant Mark Lemley's ("Lemley") Motion to Dismiss (Doc. No. 69), Plaintiff Ciolli's

Memorandum of Law in Opposition thereto (Doc. No. 77), and Lemley's Reply in further

support thereof (Doc. No. 86), Defendant Heide Iravani's ("Iravani") Motion to Dismiss (Doc.

No. 72), and Plaintiff Ciolli's Memorandum of Law in Opposition thereto (Doc. No. 78).  For the

reasons that follow, the Motions are granted in part and denied in part.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

While attending law school from August 2004 to May 2007, Plaintiff Ciolli was involved

1

in the administration of the AutoAdmit website, an internet discussion board for the exchange of

information on institutions of higher education.  Beginning in 2005, pseudonymous visitors to

the AutoAdmit website began to post several sexually explicit messages about Brittan Heller

("Heller"), a female student at Yale Law School.  In 2007, Iravani, another female student at Yale

Law, was the subject of similar posts on AutoAdmit and was also listed on T14 Talent, a website

designed to rate the attractiveness of women from the top fourteen law schools in the country.

When Heller and Iravani failed to cause the removal of these posts from the Internet, they

hired ReputationDefender, a public relations agency specializing in online reputation

management.  Chanin, a director at ReputationDefender, handled some aspects of Heller and

Iravani's matter.  As part of its representation, ReputationDefender launched a campaign to clean

up AutoAdmit and to clear the posts directed at Heller and Iravani.  Heller and Iravani also

retained Lemley of the law firm of Keker & Van Nest LLP ("Keker & Van Nest") and David

Rosen ("Rosen") of the law firm of Rosen & Associates, P.C. ("Rosen & Associates").  On June

8, 2007, Heller and Iravani filed a lawsuit in the United States District Court for the District of

Connecticut (the "Connecticut Litigation")[1] against Plaintiff and 28 pseudonymous individuals

for harassing comments made about them in posts to the AutoAdmit and T14 Talent websites.

Following an investigation into the identity of the pseudonymous posters, Heller and Iravani

amended their complaint on November 8, 2007, removing Plaintiff and naming additional

---

[1]  Doe I and Doe II v. Individuals Whose True Names Are Unknown, United States
District Court for the District of Connecticut, Civ. No. 07-0909.

pseudonymous defendants.

Following his dismissal from the Connecticut Litigation, Plaintiff brought the instant action in the Court of Common Pleas of Philadelphia County on March 5, 2008.  Defendants removed to this Court on June 3, 2008 on diversity grounds.  The Complaint alleges wrongful initiation of civil proceedings and abuse of process claims against Heller, Iravani, Lemley, Keker & Van Nest, Rosen, and Rosen & Associates; libel, slander, publicity placing plaintiff in false light, and tortious interference with contractual relations against Heller, Iravani, Chanin, and ReputationDefender; and unauthorized use of name or likeness and publicity placing plaintiff in a false light against T14 Talent.  (Compl. ¶¶ 156-218.)  By Order dated February 23, 2009, we dismissed Heller as a defendant from the instant action because Plaintiff had not demonstrated good cause for his failure to serve her with the summons and complaint within the time allotted by Federal Rule of Civil Procedure 4(m) and by the multiple extensions granted by this Court. Also, the parties stipulated on May 15, 2009 that Plaintiff's claims for slander and abuse of process were dismissed without prejudice.

By Order dated March 31, 2009, this Court denied without prejudice Motions to Dismiss brought by Defendants Chanin, ReputationDefender, Lemley, and Iravani so that Plaintiff could conduct jurisdictional discovery.  Jurisdictional discovery was completed on April 30, 2009. Now, Defendants Chanin and ReputationDefender renew their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction as well as Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted;

Defendant Lemley renews his Motion to Dismiss pursuant to Rule 12(b)(2); and Defendant

Iravani renews her Motion to Dismiss pursuant to Rule 12(b)(6) as well as Rule 12(b)(2).

II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b), a party may assert several defenses by

motion before filing a responsive pleading.  One such defense is the lack of personal jurisdiction.

Fed. R. Civ. P. 12(b)(2).  A motion to dismiss for lack of personal jurisdiction "is inherently a

matter which requires resolution of factual issues outside the pleadings."  Time Share Vacation

Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  "When a defendant raises the

defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come

forward with sufficient facts to establish that jurisdiction is proper."  Mellon Bank PSFS, Nat'l

Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  To meet this burden, the plaintiff must

establish "with reasonable particularity sufficient contacts between the defendant and the forum

state to support jurisdiction."  Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d

434, 437 (3d Cir. 1987).  The plaintiff must establish these "jurisdictional facts through sworn

affidavits or other competent evidence."  Time Share Vacation Club, 735 F.2d at 66 n.9.

"Although the plaintiff bears the burden of demonstrating the facts that establish personal

jurisdiction," the court must construe any disputed facts in the light most favorable to the

plaintiff.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (citations omitted).

A complaint may also be dismissed for "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss brought pursuant to

Federal Rule of Civil Procedure 12(b)(6), we must accept as true all factual allegations set forth in the complaint.  See Malia v. Gen. Elec. Co., 23 F.3d 828, 830 (3d Cir. 1994).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions,'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks omitted).  In other words, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556) (ellipses in original).  Therefore, a claim may be dismissed when the facts alleged and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought.  See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).  The court may look to the allegations made in the complaint, the exhibits attached to the complaint, and any documents whose authenticity no party questions and whose contents are alleged in the complaint.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).  Documents attached to a defendant's Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the plaintiff's complaint and if they are central to the plaintiff's claims.  Id.

III.    DISCUSSION

A.    Personal Jurisdiction

Whether personal jurisdiction may be exercised over a defendant is a question of law. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996).

There are two distinct theories under which personal jurisdiction may be exercised—general jurisdiction and specific jurisdiction.  "When a state has general jurisdiction over a party, that party can be haled into court in that state 'regardless of whether the subject matter of the cause of action has any connection to the forum.'"  Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).  Specific jurisdiction, on the other hand, "is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities such that the defendant 'should reasonably anticipate being haled into court' in that forum."  Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

"Under Federal Rule of Civil Procedure 4(e), a district court may assert personal jurisdiction 'over non-resident defendants to the extent permissible under the law of the state where the district court sits.'"  Id. (quoting Pennzoil Prods., 149 F.3d at 200).  Because Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322(b), authorizes Pennsylvania courts "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment," see Remick, 238 F.3d at 255 (quoting Farino, 960 F.2d at 1221), we "look to federal constitutional doctrine to determine [a defendant's] susceptibility to personal jurisdiction in Pennsylvania," Vetrotex, 75 F.3d at 150.  "Due process requires that the defendant have 'minimum contacts' in the forum state."  Remick, 238 F.3d at 255 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  These

minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Id. (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 109 (1987)).  In addition to calling for minimum contacts, due process also requires that "the exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.'"  Id. (quoting Int'l Shoe, 326 U.S. at 316).

Plaintiff asserts that there is general jurisdiction over ReputationDefender, specific jurisdiction over ReputationDefender, Chanin, Lemley, and Iravani, and both general and specific jurisdiction by imputation over Iravani.  Defendants ReputationDefender, Chanin, Lemley, and Iravani challenge these assertions.  In their respective motions to dismiss, Defendants argue that the extent of their contacts in Pennsylvania is insufficient to support personal jurisdiction in this case.

i.      General Jurisdiction over ReputationDefender

ReputationDefender describes itself as an "online reputation management solution company" that is incorporated in Delaware with its principal place of business in California. (Defs. Chanin & ReputationDefender's Mot. Dismiss, Ex. E ¶¶ 3-4.)  ReputationDefender has no offices in Pennsylvania but has conducted $10,631.42 of business via internet sales with customers who list Pennsylvania as their place of residence.  (Id. at Ex. E ¶¶ 5-7.)  This business in Pennsylvania originated from approximately 100 different customers and constituted 0.7% of ReputationDefender's total business.  (Id. at Ex. E ¶¶ 7, 9.)  ReputationDefender admits to

having hired eight Pennsylvania residents as part-time contractors who worked remotely over the internet but states that these contractors did not work on any AutoAdmit matter and that, by the time the Complaint in this matter was filed, these contractors were no longer associated with ReputationDefender.  (Id.  at Ex. E ¶ 11.)  At the time of the filing of the Complaint, ReputationDefender also had two part-time contractors who listed Pennsylvania addresses while residing in California to attend Stanford University, but these contractors now list California addresses.  (Id. at Ex. E ¶ 12.)  According to ReputationDefender, its only contacts with Pennsylvania include Chanin's phone conversation with the University of Pennsylvania Law School's Dean of Students, some phone conversations with student reporters at the *Daily Pennsylvanian*, a few email and phone communications with Ciolli and Cohen, a visit to the part-time contractors in Pennsylvania lasting a few hours, and a television interview in Pittsburgh, Pennsylvania.  (Id. at Ex. A ¶¶ 9-11, Ex. E ¶¶ 10-11, 19-21.)

General jurisdiction can be exercised over a corporation in Pennsylvania where the corporation is incorporated in Pennsylvania, consents to jurisdiction in Pennsylvania, or carries on a continuous and systematic part of its general business within Pennsylvania.  42 Pa. Cons. Stat. Ann. § 5301(a)(2).  Because ReputationDefender has never been incorporated in Pennsylvania and has not consented to or waived personal jurisdiction, we need only determine whether ReputationDefender's contacts with Pennsylvania have been "continuous and systematic," Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984), a showing that requires "significantly more than mere minimum contacts," Provident Nat'l Bank v.

Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Indeed, the plaintiff must

present "extensive and persuasive" facts demonstrating the defendant's connections with the

forum state.  Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589

(3d Cir. 1982) (citations omitted).  These connections should reflect the defendant's "purposeful

and extensive availment," Provident Nat'l Bank, 819 F.2d at 437 (citing Gulentz v. Fosdick, 466

A.2d 1049 (Pa. Super. Ct. 1983)), such that the defendant could "reasonably anticipate being

haled into court," World-Wide Volkswagen, 444 U.S. 286, 297 (1980).

    To meet his burden in establishing general personal jurisdiction, Plaintiff primarily relies

on two of the contacts listed by ReputationDefender—the contractors from Pennsylvania hired by

ReputationDefender and the business conducted by ReputationDefender in Pennsylvania.  (Pl.'s

Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss 3-4.)  Plaintiff claims that,

although ReputationDefender claims that it has only conducted $10,631.42 in business in

Pennsylvania, this business was a part of ReputationDefender's regular course of dealing.  (Id. at

3.)  Similarly, he asserts that the Pennsylvania citizens who worked for ReputationDefender

qualify as agents of the company who formed a continuous and systematic part of

ReputationDefender's business.  (Id. at 4.)

    Plaintiff is correct to point out that the percentage of a defendant's business conducted in

the forum state is not necessarily dispositive.  Provident Nat'l Bank, 819 F.2d at 437-38.  More

important than the amount of business conducted in the state is the nature of defendant's business

in the state, that is, whether the business dealings are central to the defendant's business and how

frequently such dealings occur.  Id. at 438.  In this case, not only does ReputationDefender's

business in Pennsylvania amount to a mere 0.7% of its total business, but the small amount of

business conducted by ReputationDefender in Pennsylvania derives from internet sales involving

only approximately 100 customers—amounting to less than 3% of ReputationDefender's total

customers—over the course of several years.  (Pl.'s Mem. Opp'n Defs. Chanin &

ReputationDefender's Mot. Dismiss 2-4; Defs. Chanin & ReputationDefender's Mot. Dismiss,

Ex. E ¶¶ 5-7.)  These remotely performed limited sales are not sufficient for general personal

jurisdiction.  See Brown v. AST Sports Sci., Inc., No. 02-1682, 2002 WL 32345935, at *6, 8

(E.D. Pa. June 28, 2002) (finding that contacts including 958 direct internet sales in one year to

Pennsylvania citizens amounting to 3.7% of the annual total orders was insufficient for general

jurisdiction); Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F. Supp. 2d

448, 451 (E.D. Pa. 1999) ("[T]he establishment of a website through which customers can order

products does not, on its own, suffice to establish general jurisdiction.").  There is no evidence

that Pennsylvania sales were an essential part of ReputationDefender's business.  Indeed,

Plaintiff makes no allegations that ReputationDefender specifically targeted Pennsylvania on its

website or in any marketing campaign, and the uncontested declaration by ReputationDefender

Chief Executive Officer, Michael Fertik, establishes that no such purposeful advertisement was

made.  (Defs. Chanin & ReputationDefender's Mot. Dismiss, Ex. E ¶ 6.)  Also, there is no

evidence that ReputationDefender interacted with its few Pennsylvania customers on the kind of

regular basis required for continuous and systematic contact.  Plaintiff merely argues that the

number of customers is "more than *de minimis*," (Pl.'s Mem. Opp'n Defs. Chanin &
ReputationDefender's Mot. Dismiss 4), but this bare conclusion does not establish the extensive
and purposeful availment necessary for general jurisdiction.

Similarly, the Pennsylvania citizens hired by ReputationDefender are not sufficient for
the exercise of general personal jurisdiction.  Regardless of whether the individuals retained by
ReputationDefender were agents of the company or simply independent contractors, the
temporary and remote nature of these contacts is not sufficiently continuous and systematic to
confer personal jurisdiction for claims unrelated to the acts of these individuals in Pennsylvania.
Two of the persons working for ReputationDefender listed Pennsylvania addresses on tax forms
but worked in California while attending Stanford University.  (Defs. Chanin &
ReputationDefender's Mot. Dismiss, Ex. E ¶ 12.)  While this retention created a very limited
connection with Pennsylvania, it is insufficient to confer general jurisdiction.  Moreover, this
contact with Pennsylvania was terminated when these two individuals changed their addresses to
California.  (Id.)  ReputationDefender did have eight others working remotely from Pennsylvania
at one time.  (Id. at Ex. E ¶ 11.)  However, these individuals did not establish a continuous
presence in Pennsylvania sufficient to confer general personal jurisdiction as they were no longer
working for ReputationDefender at the time of the filing of the Complaint.  (Id.)

For these reasons, we find ReputationDefender's contacts with Pennsylvania to be limited
and sporadic rather than systematic and continuous.  While ReputationDefender did have some
interaction with Pennsylvania, this interaction did not rise to the level of extensive and

purposeful availment required for the exercise of general jurisdiction.

    ii.  Specific Jurisdiction over ReputationDefender

   In establishing specific jurisdiction, a plaintiff may rely on either the traditional test or the

effects test.  Both tests have been adapted to comport with the requirements of due process:

> Just as the standard test prevents a defendant from being haled into
> a jurisdiction solely as a result of random, fortuitous, or attenuated
> contacts, the effects test prevents a defendant from being haled into
> a jurisdiction solely because the defendant intentionally caused harm
> that was felt in the forum state if the defendant did not expressly aim
> his conduct at that state.

Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (internal citations omitted).  Under the

traditional test, the court must apply a three-part inquiry: (1) the defendant must have done "some

act or consummate[d] some transaction with the forum or perform[ed] some act by which he

purposefully avails himself of the privilege of conducting activities in the forum, thereby

invoking the benefits and protections of its laws"; (2) the plaintiff's "claim must be one which

arises out of or results from the defendant's forum-related activities"; and (3) the "exercise of

jurisdiction must be reasonable."  Budget Blinds, Inc. v. White, 536 F.3d 244, 260 (3d Cir.

2008); see also Marten, 499 F.3d at 296.  To determine whether the exercise of jurisdiction is

reasonable, the court may consider a variety of factors including "the burden on the defendant,

the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining

convenient and effective relief, the interstate judicial system's interest in obtaining the most

efficient resolution of controversies, and the shared interest of the several States in furthering

fundamental substantive social policies."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477

(1985) (citations omitted).  Because specific jurisdiction only exists where the plaintiff's claims "arise out of or relate to" the defendant's forum-related conduct, Helicopteros, 466 U.S. at 414, our application of the traditional test must follow a "claim-specific analysis," Remick, 238 F.3d at 255.

Plaintiff, having the burden to establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction," Provident Nat'l Bank, 819 F.2d at 437, points to the website maintained by ReputationDefender as well as the phone calls and emails made by Chanin to contacts in Pennsylvania in support of personal jurisdiction over ReputationDefender.  (Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss 5-7.)  We look first to the ReputationDefender website.  Because "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world," the plaintiff must present evidence "that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts."  Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003) (citing Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)).  To determine whether a defendant targets its website to the forum state or its residents, we should consider a sliding scale approach.  "At one end of the spectrum are situations where a defendant clearly does business over the Internet" by entering "into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."  Zippo, 952 F. Supp.

13

at 1124 (citing <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257 (6th Cir. 1996)).  At the other end

are passive websites where "a defendant has simply posted information on an Internet Web site

which is accessible to users in foreign jurisdictions."  <u>Id.</u>  "The middle ground is occupied by

interactive Web sites where a user can exchange information with the host computer."  <u>Id.</u>

Defendant ReputationDefender has stated in a sworn declaration that its website is "a

passive website that never solicited or transacted business."  (Defs. Chanin &

ReputationDefender's Mot. Dismiss, Ex. E ¶ 16.)  However, Plaintiff attaches copies of pages

from ReputationDefender's website that contradict Defendant ReputationDefender's declaration.

(Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss, Ex. C.)[2]  These pages

contain links to registration forms for MyChild and MyReputation, fee-based services and

memberships that ReputationDefender provides.  Thus, ReputationDefender's website is not

merely a passive website for the posting of information; rather, business is also transacted.

Included in the business transacted through the ReputationDefender website was $10,631.42

from customers who listed a Pennsylvania address in their contact information.  (Defs. Chanin &

ReputationDefender's Mot. Dismiss, Ex. E ¶¶ 6-7.)  Thus, through its interactions via the

website, ReputationDefender purposefully availed itself of the privilege of conducting its

activities in Pennsylvania.

Having decided that the website constitutes purposeful availment, we must next consider

---

[2]     We find that this evidence is sufficiently competent to respond to the sworn
declaration submitted by ReputationDefender Chief Executive Officer, Michael Fertik, for
purposes of a motion to dismiss for lack of personal jurisdiction.

whether Plaintiff's claims arise out of or relate to ReputationDefender's website.  The relevant

contacts are the MyReputation and MyChild registrations by Pennsylvania residents on

ReputationDefender's website that we reasonably infer to have occurred.  Plaintiff's claims for

libel and false light are both based in part on postings to this website regarding Plaintiff and

AutoAdmit.  Persons interested in subscribing to ReputationDefender's services had access to

these postings.  See Conlin Enter. Corp. v. SNEWS LLC, No. 07-922, 2008 WL 803041, at *7

(D. Utah Mar. 24, 2008).  Indeed, links to MyReputation and MyChild appear at the bottom of

posts discussing Plaintiff and AutoAdmit, and thus, such posts seem to serve, in part, as

examples of ReputationDefender's services in an effort to attract new customers in Pennsylvania.

Thus, we find that the posts about Plaintiff and AutoAdmit are related to Plaintiff's claims for

libel and false light—and therefore believe that Defendant ReputationDefender should have

reasonably anticipated being haled into court in Pennsylvania on these causes of action.

However, Plaintiff's claim for tortious interference, which deals with a letter writing campaign to

Plaintiff's future employer, has no relation to the website whatsoever.  Because our application of

the traditional test must follow a "claim-specific analysis," Remick, 238 F.3d at 255, we cannot

use the website to support specific personal jurisdiction over ReputationDefender with respect to

this unrelated claim.

Where there exists purposeful availment by the defendant arising out of the plaintiff's

claims, "there is a 'strong presumption of reasonableness.'"  Budget Blinds, 536 F.3d at 265.

Thus, "a defendant who purposefully has directed his activities at forum residents . . . must

present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477; see also Farino, 960 F.2d at 1226-27. Having focused on the first two elements of the traditional test, Defendant ReputationDefender has not identified any reasons that the exercise of jurisdiction would be unreasonable. (Defs. Chanin & ReputationDefender's Mem. Supp. Mot. Dismiss 11-19; Defs. Chanin & ReputationDefender's Reply 1-4.) Therefore, it has not met its burden in rebutting the presumption of reasonableness. Accordingly, we find that the exercise of personal jurisdiction for the claims of libel and false light comport with traditional concepts of fair play and substantial justice.

We will next determine whether the phone calls and emails made by Chanin as an agent for ReputationDefender to contacts in Pennsylvania constitute purposeful availment such that there is personal jurisdiction over ReputationDefender for the other claims asserted against them by Plaintiff. While Plaintiff identifies several communications by Chanin that are allegedly related to his claims, none of these communications is related to Plaintiff's claim for tortious interference with contractual relations.[3] Thus, even if these communications meet the purposeful availment element of the traditional test, they are not sufficiently related to Plaintiff's tortious interference claim in the instant action to establish specific jurisdiction.

After our analysis of the traditional test with respect to the claims asserted against

---

[3]     As an agent of ReputationDefender, Chanin's acts within the scope of the agency can be used to subject ReputationDefender to personal jurisdiction. D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 108 (3d Cir. 2009).

ReputationDefender, we have concluded that there is specific personal jurisdiction over this Defendant only with respect to Plaintiff's claims for libel and false light.  However, Plaintiff asserts that analysis under the effects test will establish specific personal jurisdiction over his other claim for tortious interference with contractual relations.  The effects test relies on the following three principal findings: (1) "the defendant committed an intentional tort"; (2) "the forum was the focal point of the harm suffered by the plaintiff as a result of that tort" such that the "'brunt' of the injury caused by [the defendant's] tortious acts would be felt by the plaintiff in the forum"; and (3) "the forum was the focal point of the tortious activity in the sense that the tort was 'expressly aimed' at the forum."  IMO Indus., Inc. v. Kiekart AG, 155 F.3d 254, 261 (3d Cir. 1998) (summarizing the holding of Calder v. Jones, 465 U.S. 783 (1984)).

Plaintiff has not met his burden for establishing specific jurisdiction under the effects test for tortious interference.  Plaintiff's claim for tortious interference alleges that Defendant ReputationDefender initiated a letter campaign urging Plaintiff's future employer in Boston, Massachusetts to rescind Plaintiff's accepted offer of employment.  (Compl. ¶¶ 203-07.)  However, beyond asserting that ReputationDefender knew that Plaintiff was temporarily residing in Pennsylvania, Plaintiff in no way identifies how ReputationDefender expressly aimed its activities at this forum.  "While knowledge that the plaintiff is located in the forum is necessary to the application of [the effects test], . . . it alone is insufficient to satisfy the targeting prong of the effects test."  IMO Indus., 155 F.3d at 266.  Rather, "[t]o establish that the defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate 'the defendant knew that the

17

plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" Marten, 499 F.3d at 298 (quoting IMO Indus., 155 F.3d at 266).  There is no allegation that any letters were sent from Pennsylvania, nor is there any allegation that ReputationDefender had any contacts with persons drafting letters in Pennsylvania.  Moreover, it seems that Massachusetts, as the forum in which the employment contract was to be performed, was the focus of any interfering tortious conduct.  Therefore, the effects test does not authorize specific personal jurisdiction over Defendant ReputationDefender for Plaintiff's claim of tortious interference.

> iii.    Specific Jurisdiction over Chanin

Chanin was until recently a full-time law student at Stanford University in California and currently works at ReputationDefender's California office.  (Defs. Chanin & ReputationDefender's Mot. Dismiss, Ex. A ¶¶ 3-4.)  Before moving to California, Chanin formerly attended the University of Pennsylvania for his undergraduate studies and graduated in 2004.  (Id. at Ex. A ¶ 5.)  Chanin states that his contact with Pennsylvania since 2004 has been limited to visits to friends and extended family, one trip to the University of Pennsylvania Law School as an admitted applicant, some scholarship preparation interviews, communications with individuals in Pennsylvania on behalf of ReputationDefender for business unrelated to this matter, and conversations via email and phone to Ciolli, Cohen, the University of Pennsylvania Law School's Dean of Students, and writers for the newspaper at the University of Pennsylvania.

(Id. at Ex. A ¶¶ 5-6, 8-11.)

Only the conversations via email and phone to Ciolli, Cohen, the University of
Pennsylvania Law School's Dean of Students, and the writers for the newspaper at the University
of Pennsylvania are in any way related to the present suit.  However, these contacts are not
sufficiently related to Plaintiff's claims so as to give rise to specific jurisdiction over Chanin.
The only remaining claims against Chanin are for libel, false light, and tortious interference with
contractual relations.  In Plaintiff's tortious interference claim, he asserts that Defendants Iravani,
Chanin, and ReputationDefender conspired with other individuals to send letters to Plaintiff's
future employer in an effort to get his prospective employment rescinded.  (Compl. ¶¶ 204-07.)
None of the above contacts with Pennsylvania are connected to Plaintiff's tortious interference
claim, and there are simply no allegations that Chanin directed any activity related to this claim
into Pennsylvania.  Thus, under either the traditional or the effects test, there is no personal
jurisdiction over Chanin for Plaintiff's tortious interference claim.

In Plaintiff's libel and false light claims, he asserts, among other things, that Chanin's
phone call to the Dean of Students for the University of Pennsylvania Law School defamed him.
(Compl. ¶¶ 183-84, 197-98.)  However, this conversation is time-barred by the applicable statute
of limitations, and thus cannot form the basis for his libel and false light claims.  42 Pa. Cons.
Stat. Ann. § 5523(1) (stating that Pennsylvania has a one-year statute of limitations for
defamation claims).  As a result, this contact is not related to these claims and cannot establish
specific jurisdiction under either the traditional or effects test.

Plaintiff also points to the ReputationDefender website and asserts that Chanin wrote the defamatory articles contained therein.  (Compl. ¶¶ 185-86, 199.)  Plaintiff has provided no evidence that Chanin was indeed the author, but even if Chanin did write the articles, he did not direct his activities into Pennsylvania or purposefully avail himself of the privilege of conducting his activities in Pennsylvania.  While we have concluded above that the articles could subject ReputationDefender to personal jurisdiction for Plaintiff's libel and false light claims, we based that conclusion on ReputationDefender's use of the website for conducting business in Pennsylvania.  The contacts established by ReputationDefender cannot be automatically imputed to Chanin as its employee.  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . .  Each defendant's contacts with the forum State must be assessed individually.").  Even if Chanin did author the posts to the website, he did not derive the business from Pennsylvania residents that ReputationDefender did and thus did not specifically direct his activities at Pennsylvania.  Rather, his use of the ReputationDefender website is more akin to the passive website that does not constitute purposeful availment whereby the defendant "has simply posted information of an Internet Web site which is accessible to users in foreign jurisdiction . . . [and] does little more than make information available to those who are interested."  Zippo Mfg., 952 F. Supp. at 1124.  Thus, Chanin did not purposely avail or expressly aim his conduct toward Pennsylvania in authoring any content on the ReputationDefender website, and this contact cannot support specific jurisdiction under either the

traditional or effects test.

Finally, Plaintiff insists that Chanin's contacts with himself, Cohen, and a writer for the newspaper at the University of Pennsylvania serve to establish personal jurisdiction for his libel and false light claims.  But Plaintiff does not allege that Chanin made any defamatory comments or misrepresentations during any of these communications.  Thus, these contacts are not related to Plaintiff's claims and cannot create specific jurisdiction over Chanin under any test.

   iv. Specific Jurisdiction over Lemley

Lemley is a lawyer working in California who represents Iravani, a resident of North Carolina, and Heller, a resident of California, in the Connecticut Litigation.  (Def. Lemley's Mot. Dismiss, Ex. A at 17.)  Lemley has been to Pennsylvania for only eight days in the past twenty years, and none of these visits had any connection to the Connecticut Litigation.  (Id. at 18.) Lemley admits that he had telephone and email contact with Cohen and Randazza, but in the case of Cohen, Lemley states that he did not know where Cohen was located during those contacts, and in the case of Randazza, Lemley states that he thought that Randazza was located in Florida during those contacts.  (Id.)  Lemley further states that he never communicated with Plaintiff. (Id.)

Plaintiff does not contest Lemley's statement of his contacts with Pennsylvania[4] but

---

[4] Although not in direct conflict with Lemley's statement that he did not know where Cohen was located during his communications with him, Plaintiff argues that Lemley was aware that Cohen was a Pennsylvania resident.  In his Memorandum of Law in Opposition to Defendant Lemley's first Motion to Dismiss, Plaintiff attaches as an exhibit an email dated July 12, 2007 in which Lemley proposed a meeting between Cohen, Iravani, Heller, and their attorneys in Philadelphia.  (Pl.'s Mem. Opp'n Def. Lemley's First Mot. Dismiss, Ex. A.)

argues that these contacts sufficiently justify the exercise of specific jurisdiction.  Specifically,

Plaintiff asserts that personal jurisdiction exists due to Lemley's filing of the lawsuit against a

Pennsylvania resident and Lemley's discussions with Cohen, an individual he knew to be a

resident of Pennsylvania, that were "designed to extract concessions . . . in exchange for

dismissing the claim against Ciolli."  (Pl.'s Mem. Opp'n Def. Lemley's Mot. Dismiss 3.)

These contacts do not satisfy the traditional test for specific jurisdiction because they do

not establish purposeful availment of Pennsylvania by Lemley.  The first contact identified by

Plaintiff is Lemley's filing of the Connecticut Litigation against a Pennsylvania resident.  Lemley

initiated this lawsuit in Connecticut on behalf of clients from North Carolina and California.  The

fact that one of the named defendants was currently residing in Pennsylvania was incidental.

Thus, Lemley in no way purposefully availed himself of the privilege of conducting his activities

in Pennsylvania, and there can be no specific jurisdiction based on this conduct.  The second

contact identified by Plaintiff—Lemley's emails and phone calls to Cohen, a Pennsylvania

resident—is similarly insufficient to establish personal jurisdiction.  The minimal exchange of

emails and phone calls will generally not subject the defendant to jurisdiction in the forum state.

See IMO Indus., 155 F.3d at 259 n.3 (citing Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141,

149 (3d Cir. 1992), for the proposition that "some minimal correspondence alone will not satisfy

---

Plaintiff asserts that this proposal "undercuts [Lemley's] argument that no evidence has been
presented indicating that he knew [Cohen] was a Pennsylvania resident."  (Id. at 7 n.4.)  Whether
this email establishes Lemley's knowledge is immaterial however to our specific personal
jurisdiction analysis.

minimum contacts").  Moreover, it is questionable whether this contact is related to Plaintiff's

wrongful initiation of civil proceedings cause of action, the only claim remaining against Lemley.

The communications that Plaintiff alleges support personal jurisdiction occurred after the filing

of suit, and therefore, while they might serve as evidence of an improper purpose, they are not a

cause of or even an impetus for Lemley's allegedly wrongful initiation of the Connecticut

Litigation.  See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 323 (3d Cir. 2007) (holding

that specific jurisdiction requires at least but-for causation).  For these reasons, Plaintiff has

failed to satisfy the traditional test for specific jurisdiction.

Plaintiff has also failed to satisfy the effects test because there is no indication that

Lemley expressly aimed his tortious conduct at Pennsylvania.  The allegedly tortious conduct

here was the wrongful initiation of the suit, which occurred in Connecticut.  Lemley may have

known that he was filing the Connecticut Litigation against a Pennsylvania resident, but that

knowledge is not sufficient under the effects test.  See Marten, 499 F.3d at 298.  Lemley's other

contact with Pennsylvania (i.e. his communications with Cohen) was not tortious and thus cannot

establish specific jurisdiction under the effects test.

v.      Specific Jurisdiction over Iravani

At the time of the filing of the Complaint, Defendant Iravani was a citizen of North

Carolina, residing in Connecticut while attending Yale Law School.  (Def. Iravani's Mem. Supp.

Mot. Dismiss 2; Def. Iravani's Mot. Dismiss, Ex. A ¶ 2.)  Iravani has traveled to Pennsylvania

approximately three times for a total of five days during her life.  (Def. Iravani's Mot. Dismiss,

Ex. A ¶ 8.)  The purpose of one of these visits was to meet with Cohen in August 2007, a

meeting which Plaintiff also attended.  (Id. at Ex. A ¶ 10.)  Iravani's only other contact with

Pennsylvania in any way related to this action occurred via a couple of emails to administrators

of AutoAdmit and Plaintiff to seek the removal of content from AutoAdmit.  (Id. at Ex. A ¶ 12.)

Defendant Iravani concedes in her Memorandum of Law in Support of her Renewed

Motion to Dismiss Plaintiff's Complaint that, "if *specific* personal jurisdiction exists over any of

her purported agents, then personal jurisdiction imputes to her."  (Def. Iravani's Mem. Supp.

Mot. Dismiss 11 (citing 42 Pa. Cons. Stat. Ann. § 5322).)  Thus, because we have found specific

jurisdiction over ReputationDefender for Plaintiff's claims for libel and false light, we also find

that there is personal jurisdiction over Iravani for these claims.  As a result, we need only

determine whether there is personal jurisdiction over Iravani for Plaintiff's claims of tortious

interference with contractual relations and wrongful initiation of civil proceedings.

Plaintiff's tortious interference claim was brought against Iravani, Chanin, and

ReputationDefender.  We found above that there was no specific jurisdiction over Chanin and

ReputationDefender on this claim, and therefore, there can be no jurisdiction over Iravani by

imputation.  Moreover, we find that Iravani's contacts cannot support specific jurisdiction for

Plaintiff's claim for tortious interference.  As was the case with Chanin and ReputationDefender,

Plaintiff does not identify any contact by Iravani with Pennsylvania that is connected to

Plaintiff's tortious interference claim.  There are simply no allegations that Iravani directed any

activity related to this claim into Pennsylvania.  Thus, under either the traditional or the effects

test, there is no personal jurisdiction over Iravani for Plaintiff's tortious interference claim.

Plaintiff's wrongful initiation of civil proceedings claim was brought against Iravani, Lemley, Keker & Van Nest, Rosen, and Rosen & Associates.  We found above that there was no specific jurisdiction over Lemley on this claim, and thus specific jurisdiction cannot be imputed to Iravani through Lemley.  However, Keker & Van Nest, Rosen, and Rosen & Associates have not contested jurisdiction and have thus waived any potential challenges.  However, this waiver cannot be imputed to Iravani; rather, we must look to these agents' activities to see whether they warrant the exercise of specific jurisdiction.  Beyond reciting the fact that agent activities should be imputed to Iravani, Plaintiff has not directed us to any jurisdictional facts with respect to Defendants Keker & Van Nest, Rosen, and Rosen & Associates.  Thus, we only look to Iravani's actions to determine whether there is specific jurisdiction over her with respect to Plaintiff's claim for wrongful initiation of civil proceedings.

Plaintiff identifies two contacts by Iravani that allegedly establish specific jurisdiction for this claim.  First, Plaintiff argues that the filing of the Connecticut Litigation against a Pennsylvania resident creates specific jurisdiction.  But just as this contact was not sufficient to establish personal jurisdiction over Lemley, this contact is not sufficient to establish personal jurisdiction over Iravani.  Second, Plaintiff argues that Iravani's attendance at the one-day Philadelphia meeting between Cohen, Iravani, Heller, and their respective lawyers supports specific jurisdiction.  However, like the phone calls made by Lemley to Cohen, this contact is not sufficiently related to Plaintiff's wrongful initiation of civil proceedings cause of action.  This

25

meeting occurred after the filing of suit, and therefore, while it might serve as evidence of an

improper purpose, it is not a cause of or even an impetus for Iravani's allegedly wrongful

initiation of the Connecticut Litigation.  See O'Connor, 496 F.3d at 323 (holding that specific

jurisdiction requires at least but-for causation).  Thus, this contact with Pennsylvania cannot

satisfy the traditional test for specific personal jurisdiction.  Nor can this contact satisfy the

effects test because there is no indication that Iravani expressly aimed any tortious conduct at

Pennsylvania.  The allegedly tortious conduct here was the wrongful initiation of the suit, which

occurred in Connecticut.  Iravani's attendance at the meeting was not tortious and thus cannot

establish specific jurisdiction under the effects test.  Thus, there is no specific jurisdiction over

Iravani for Plaintiff's wrongful initiation of civil proceedings claim.

      B.      Motion to Dismiss for Failure to State a Claim

            i.      Libel

Defendants ReputationDefender and Iravani argue that we must dismiss Plaintiff's libel

claim because none of the complained-of statements are defamatory as a matter of law.  (Def.

Chanin & ReputationDefender's Mem. Supp. Mot. Dismiss 20; Def. Iravani's Mem. Supp. Mot.

Dismiss 17.)  In asserting a defamation claim, the plaintiff has the burden of proving:

> (1) The defamatory character of the communication.  (2) Its publication
> by the defendant.  (3) Its application to the plaintiff.  (4) The
> understanding by the recipient of its defamatory meaning.  (5) The
> understanding by the recipient of it as intended to be applied to the
> plaintiff.  (6) Special harm resulting to the plaintiff from its
> publication.  (7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. Ann. § 8343(a); see also Moore v. Cobb-Nettleton, 889 A.2d 1262, 1267 (Pa.

Super. Ct. 2005).  "It is the function of the court to determine whether the challenged [statement] is capable of a defamatory meaning."  Tucker v. Phila. Daily News, 848 A.2d 113, 123-24 (Pa. 2004).  In order to be defamatory, a statement must "tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him."  Id. at 124 (quoting Birl v. Phila. Elec. Co., 167 A.2d 472, 475 (Pa. 1960)). "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society."  Id. (alteration in original) (quoting Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (Pa. 1967)).

In making this determination, the "court must view the statements in context," id. (quoting Baker v. Lafayette Coll., 532 A.2d 399, 402 (Pa. 1987)), and "consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate," Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1995).  A publication cannot be rendered defamatory "by an innuendo which puts an unfair and forced construction on the interpretation of the publication."  Thomas Merton Ctr. v. Rockwell Intern. Corp., 442 A.2d 213, 217 (Pa. 1981) (quoting Sarkees v. Warner-West Corp., 37 A.2d 544, 546 (1944)).  "An innuendo must be warranted, justified and supported by the publication."  Id. (citing Bogash v. Elkins, 176 A.2d 677 (Pa. 1962)).

Plaintiff has identified numerous statements he believes have defamed him.  First, Plaintiff claims that Chanin's conversation with the Dean of Students of the University of

27

Pennsylvania Law School constitutes libel.  In addition to being time-barred by the one year

statute of limitations for defamation claims in Pennsylvania, 42 Pa. Cons. Stat. Ann. § 5523(1),

this oral conversation cannot form the basis of a libel claim.  Libel deals with the publication of

printed or written matter, and not oral statements.  Tucker, 848 A.2d at 124 (quoting Schnabel v.

Meredith, 107 A.2d 860, 862 (Pa. 1954)).  Therefore, any statements made during this oral

conversation between Chanin and the Dean of Students, even if defamatory, cannot state a claim

for libel.

        Plaintiff next points to a Washington Post article[5] stating that the AutoAdmit website was

"run by a third-year law student at the University of Pennsylvania and a 23-year-old insurance

agent."  (Def. Iravani's Mot. Dismiss, Ex. B.)  Plaintiff argues that this statement was made by

Iravani and that it is defamatory because it implies that Plaintiff was in part responsible for the

offensive posts by pseudonymous individuals.  (Pl.'s Mem. Opp'n Def. Iravani's Mot. Dismiss 8-

9.)  This complained-of statement could not reasonably produce the reaction among readers that

Plaintiff claims.  Especially when this statement is read in context with the rest of the article, the

meaning of the statement is clear: Plaintiff is an administrator of the site, and an administrator is

distinct from an anonymous user.  Indeed, the article explicitly states that the offensive content

---

        [5]        Although generally we cannot look to matters outside the pleadings in resolving a
motion to dismiss, we may examine documents attached to a defendant's Rule 12(b)(6) motion to
dismiss if they are referred to in the plaintiff's complaint and central to the plaintiff's claims.
Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).  Here, Iravani has
included a copy of the Washington Post article, which is referenced in Plaintiff's Complaint to
support his defamation claims.  (Compl. ¶¶ 57-58.)

on AutoAdmit derives from "hundreds of chats posted by anonymous users" and reports that

Plaintiff stated in an interview that he "definitely [doesn't] agree with a lot of the conduct on the

board" but lacks the authority to have comments removed.  (Def. Iravani's Mot. Dismiss, Ex. B.)

For these reasons, a reasonable reader of the article could not rationally infer from the statement

claiming that Plaintiff runs the AutoAdmit website that Plaintiff was responsible for the

offensive posts.  As a result, the statement that Plaintiff runs the AutoAdmit website is not

defamatory.  After all, Plaintiff was not ashamed of his administrative role in AutoAdmit, and he

freely admits in his Complaint that he "had listed AutoAdmit on his resume along with his prior

employment positions."  (Compl. ¶ 26.)  Thus, we fail to see any additional harm to Plaintiff that

would result from the article's affiliation of Plaintiff with AutoAdmit.

In the Washington Post article, Iravani also claims that her photographs were posted in

chats on the AutoAdmit website.  (Def. Iravani's Mot. Dismiss, Ex. B.)  Plaintiff claims that this

comment is defamatory because it implies that Plaintiff either posted Iravani's photographs, or

allowed others to do so, without her permission and for the purpose of enabling others to ridicule

Iravani and to engage in a vile and reprehensible online discussion about her."  (Pl.'s Mem.

Opp'n Def. Iravani's Mot. Dismiss 9.)  But again, this implication is unreasonable.  While the

article does state that "[t]he chats sometimes include[d] photos taken from women's Facebook

pages," this comment does not make reference to Plaintiff at all.  Furthermore, reading this

statement in context with the full article, it is clear that all chats were "posted by anonymous

users" and that Plaintiff, as an administrator, stated that he did not have the authority to remove

any posts.  (Def. Iravani's Mot. Dismiss, Ex. B.)  Therefore, the statement that the chats

sometimes included Iravani's photographs does not defame Plaintiff.

Iravani was also interviewed for a <u>Yale Herald</u> article,[6] which states that after Iravani

asked "site administrators to remove the content—a request the student now called 'naive'—the

images spread to various blogs and even pornographic websites, although the woman was fully

clothed."  (Def. Iravani's Mot. Dismiss, Ex. D.)  Plaintiff claims that one can reasonably infer "a

causal effect between Iravani's request [for content removal] and the subsequent re-publication

of the photographs, [thereby implying] that the AutoAdmit 'administrators' had some

involvement in that re-publication."  (Pl.'s Mem. Opp'n Def. Iravani's Mot. Dismiss 10.)  We do

not find this to be a reasonable inference that the average reader would make.  The article does

not state that the images were spread by Plaintiff because Iravani asked him and other

AutoAdmit administrators to remove the content; rather, the article merely relates events in a

chronological fashion.  To the extent that any causal relationship exists between the two events,

it is limited to the fact that, because the images were not removed, users could access and share

the photographs on the Internet.  However, to conclude that there is an implication that Plaintiff

himself was involved in publishing the photographs requires a tremendous logical leap that

cannot rationally be made.  Therefore, the statement that the images spread to various websites

---

[6]     Like the <u>Washington Post</u> article, the <u>Yale Herald</u> article is attached to Iravani's
Motion to Dismiss, is referenced in Plaintiff's Complaint, and partially forms the basis for
Plaintiff's defamation claims.  (Compl. ¶¶ 84-85.)  Thus, we can examine the article itself in
resolving this Motion to Dismiss.  <u>See</u> <u>Pryor</u>, 288 F.3d at 560.

does not have the defamatory meaning that Plaintiff alleges and cannot support his libel claim.

Plaintiff next points to the ReputationDefender website,[7] which he claims falsely affiliated him with the T14 Talent website and created the impression that he was responsible for the offensive posts on AutoAdmit.  (Pl.'s Mem. Opp'n Def. Iravani's Mot. Dismiss 17.) Specifically, the website makes comments such as the following:

> Until recently, when ReputationDefender effected the repeated removal of photographs of its clients from the site, many of the same women were being victimized on a related 'contest' web page purporting to rank the 'Most Appealing Women at Top Law Schools.' . . . Not only have the owners of the website AutoAdmit allowed it to be used to harass and degrade women, they have actively shielded the harassers behind a veil of anonymity.

(Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss, Ex. C.)  The website asserts that "[d]espite numerous pleas by the victims, AutoAdmit did nothing.  In fact, the site allowed the girls' pleas for help to be posted and publicly humiliated by harassers hiding behind a veil of anonymity."  (Id.)  Because ReputationDefender believed that it could stimulate change by publicly calling for it, ReputationDefender developed the "Petition to Clean Up AutoAdmit.com and its Affiliates" and posted it on the website.  (Id.)  This Petition asks Plaintiff to (1) "remove . . . any and all references to women subjected to the 'Most Appealing Women @ Top Law Schools [Contest]' and 'Top14 Girls' on AutoAdmit.com/Xoxohth.com as well as all

---

[7]       The ReputationDefender website is attached to Plaintiff's Memorandum of Law in Opposition to Defendant Chanin and ReputationDefender's Motion to Dismiss, is referenced in Plaintiff's Complaint, and partially forms the basis of Plaintiff's defamation claims.  (Compl. ¶¶ 62-71.)  Thus, we can examine the website itself in resolving this Motion to Dismiss.  See Pryor, 288 F.3d at 560.

other women victimized and purposely misrepresented on these websites without their consent";

(2) "remove any and all links to photographs of women who have not given . . . their consent to

the linking, use or discussion of their photographs on the AutoAdmit.com/Xoxohth.com

website"; (3) "establish and place on AutoAdmit.com/Xoxohth.com a clear and permanent

policing policy for derogatory personal comments about private individuals, and make clear that

the owners of AutoAdmit.com/Xoxohth.com, you and Jarrett Cohen, will take immediate steps to

mitigate the distribution of this content"; and (4) "implement an easy dispute resolution

mechanism on AutoAdmit.com/Xoxohth.com to address concerns about defamatory, hurtful and

worthless commentary about private individuals."  (Id.)

In their Motions to Dismiss, Defendants ReputationDefender and Iravani assert that these

statements are not defamatory.[8]  In making this argument, these Defendants primarily rely on

their assertions that the statements contained on the website were true.  (Defs. Chanin &

ReputationDefender's Mem. Supp. Mot. Dismiss 21-23.)  For instance, in responding to

Plaintiff's assertion that the ReputationDefender website affiliates him with the T14 Talent

website, Defendants ReputationDefender and Iravani claim that "the T14 Talent website stated

that it was part of the 'XOXOhth' (AutoAdmit) community."  (Id. at 21.)  Similarly, in

responding to Plaintiff's assertion that ReputationDefender's website falsely claimed that

pictures of their clients were posted on the AutoAdmit website, Defendants ReputationDefender

---

[8]     Defendant Iravani does not contest, at least at the motion to dismiss stage,
Plaintiff's assertion that any statements made by ReputationDefender as her alleged agent are
attributed to her.  (Def. Iravani's Mem. Supp. Mot. Dismiss 18-19.)

and Iravani explain that any comment referring to the posting of pictures was actually describing the linking of pictures from other websites.  (Id. at 22.)  They also insist, in responding to the "Petition to Clean Up AutoAdmit.com and its Affiliates," that it was reasonable for them "to believe that Ciolli may have [had] some ability to effectuate change at AutoAdmit."  (Id. at 23.) Truth is an absolute defense to a defamation claim.  Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 563 (E.D. Pa. 2000).  However, because the defendant has the burden of proving the truth of the statements, the assertion of this defense, while perhaps convincing, is not properly considered at the motion to dismiss stage.  Id.  Therefore, we will not consider such arguments at this stage of the proceedings.

Nevertheless, Defendants ReputationDefender and Iravani do make other arguments to support their assertion that the statements contained in the website are not defamatory to Plaintiff.  These Defendants claim that statements asserting that "a person is affiliated with a website that contains negative content and should take action to remove such content is not enough to blacken Ciolli's reputation in the community or to deter third persons from associating or dealing with him."  (Def. Iravani's Mem. Supp. Mot. Dismiss 19.)  They bolster this argument by pointing out that Plaintiff has "prominently affiliated himself with the controversial AutoAdmit website," thereby implying that Plaintiff has already sullied his own reputation by dabbling in "distasteful" websites.  (Def. Chanin & ReputationDefender's Mem. Supp. Mot. Dismiss 21.)  Plaintiff responds that the statements in the website were "designed to create the public impression that Ciolli was responsible for internet postings that were vile, sexually and

racially offensive and misogynistic" and that therefore his claims cannot be dismissed as not defamatory as a matter of law.  (Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss 17.)

Whereas the statements in the <u>Washington Post</u> and <u>Yale Herald</u> articles were clearly incapable of a defamatory meaning, we are not able to determine at this stage of the litigation whether the statements contained on the ReputationDefender website are defamatory.  <u>See</u> <u>Tucker</u>, 848 A.2d at 126 (noting that, at the pleading stage, there has been no discovery and that therefore "the full effects of the statement" are not yet known).  We think that discovery on the issues raised by the parties is needed to more fully develop the factual record before we can examine whether the statements on the website are defamatory.  As a result, Plaintiff's libel claim survives dismissal but only for the statements contained on the ReputationDefender website.

ii.    False Light

The tort of false light involves "publicity that unreasonably places the other in a false light before the public."  <u>Rush v. Phila. Newspapers, Inc.</u>, 732 A.2d 648, 654 (Pa. Super. Ct. 1999) (quoting <u>Strickland v. Univ. of Scranton</u>, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)); <u>see also</u> <u>Seale v. Gramercy Pictures</u>, 964 F. Supp. 918, 923 (E.D. Pa. 1997) (quoting Restatement (Second) of Torts § 652E).  To find a cause of action for false light, there must be "a major misrepresentation of a person's character, history, activities or beliefs . . . that could reasonably be expected to cause a reasonable man to take serious offense."  <u>Rush</u>, 732 A.2d at 654 (citing

34

Strickland, 700 A.2d at 987); see also Seale, 964 F. Supp. at 924 (quoting Restatement (Second) of Torts § 652E cmt. c).  The Pennsylvania Superior Court has stated that "[t]he elements to be proven [in a false light claim] are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public."  Rush, 732 A.2d at 654 (quoting Strickland, 700 A.2d at 987).  Negligence may not support a claim of false light; "[r]ather, the person making the statement that is accused of rendering another in a false light must act with 'knowledge of or . . . in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'"  Id. (ellipses in original) (quoting Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988)).

In setting forth his claim for false light, Plaintiff points to Chanin's conversation with the Dean of Students at the University of Pennsylvania Law School and to the ReputationDefender website.  (Compl. ¶¶ 197-202.)  We note as a preliminary matter that Plaintiff has admitted that Chanin's conversation with the Dean of Students is time-barred by the one year statute of limitations for defamation in Pennsylvania.  (See Stipulation, May 15, 2009.)  Though Plaintiff made this admission in the context of his claim for slander, the one year statute of limitations applies equally to claims for false light.  42 Pa. Cons. Stat. Ann. § 5523(1).  Additionally, there is a serious question as to whether this conversation between two people meets the publicity element of false light.  See Curran v. Children's Serv. Ctr., 578 A.2d 8, 12 (Pa. Super. Ct. 1990) (finding that publicity requires communication "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of general public

knowledge"). Thus, we need not consider whether the statements made during this conversation support Plaintiff's claim for false light. Furthermore, to the extent that Plaintiff's claim for false light relies on the Washington Post and Yale Herald articles, we have already found in considering Plaintiff's libel claim that those articles do not make the representations that Plaintiff asserts, and therefore, these articles cannot support Plaintiff's claim for false light.

Thus, the only possible remaining source of false light publicity against Plaintiff is the ReputationDefender website. The complained-of statements on the ReputationDefender website relate to Plaintiff's responsibilities in administering the AutoAdmit website and to AutoAdmit's relationship with the T14 Talent website. Defendants ReputationDefender and Iravani assert that Plaintiff has failed to assert a claim for false light because these statements do not constitute major misrepresentations nor do they concern private facts and also because the administration of AutoAdmit is a matter of public concern. (Defs. Chanin & ReputationDefender's Mem. Supp. Mot. Dismiss 23-24.) Plaintiff responds that the alleged misrepresentations stated on the website constitute major falsehoods about his personal character because they make him seem responsible for "the T14 Talent web site and the vile and offensive material posted on portions of the AutoAdmit site." (Pl.'s Mem. Opp'n Defs. Chanin & ReputationDefender's Mot. Dismiss 19-20.) Plaintiff further states that, although his position as an administrator of AutoAdmit was public information, ReputationDefender's representations of his responsibilities and activities, and not his role, as AutoAdmit administrator form the subject of his false light claim. (Pl.'s Mem. Opp'n Def. Iravani's Mot. Dismiss 12-13.)

It is not appropriate at this stage in the litigation to resolve the issues raised by

Defendants ReputationDefender and Iravani because resolution would require much

consideration of the specific facts of the case.  At this stage of the litigation, there has been no

discovery to develop the factual record, and therefore, we decline to make these fact-intense

determinations at this time.[9]

IV.    CONCLUSION

Accordingly, Defendant Lemley's Motion is granted such that all claims against

Defendant Lemley are dismissed for lack of personal jurisdiction.  In addition, Defendants

Chanin and ReputationDefender's Motion is granted in part and denied in part as follows: all

claims against Defendant Chanin are dismissed for lack of personal jurisdiction; Plaintiff's claim

against Defendant ReputationDefender for tortious interference with contractual relations is

dismissed for lack of personal jurisdiction; and Plaintiff's claims against Defendant

ReputationDefender for libel and false light survive dismissal but only to the extent that they rely

on the content on the ReputationDefender website.  Finally, Defendant Iravani's Motion is

granted in part and denied in part as follows: Plaintiff's claims against Defendant Iravani for

tortious interference with contractual relations and wrongful initiation of civil proceedings are

---

[9]    We note that there may be an issue as to whether misrepresentations must concern private facts in order to make out a false light claim.  Compare Seale v. Gramercy Pictures, 964 F. Supp. 918 (E.D. Pa. 1997), with Rush v. Phila. Newspapers, Inc., 732 A.2d 648 (Pa. Super. Ct. 1999); see also Restatement (Second) of Torts § 652E cmt. a (stating that "the rule stated in this Section does not depend upon making public any facts concerning the private life of the individual").  However, because we find that, even if we impose the private facts element, Plaintiff has sufficiently alleged enough facts to survive a motion to dismiss, we need not address this argument now.

dismissed for lack of personal jurisdiction; and Plaintiff's claims against Defendant Iravani for

libel and false light survive dismissal but only to the extent that they rely on the content on the

ReputationDefender website.  An appropriate Order follows.